Warren W. and Blanche ARCHBOLD,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 778–60.

United States District Court
D. New Jersey.

Jan. 9, 1962.

Frankel & Frankel, by Leopold Frankel, Paterson, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Herman Wilson, Atty., Dept. of Justice, Washington, D. C., for defendant.

MEANEY, District Judge.

The instant action was filed by the plaintiffs herein to recover federal income taxes assessed against them pursuant to the provisions of section 301(c) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 301(c) (1).

This court has jurisdiction of the matters involved by reason of the provisions of 28 U.S.C. § 1346(a) (1).

The basic facts have been stipulated and the matter was submitted on briefs and arguments thereon.

Immediately preceding the transaction upon which the present dispute arose, Warren and Blanche Archbold, plaintiffs herein, and their son George Archbold owned approximately 98 per cent of Archbold and Company, a New Jersey corporation, organized in 1923 to engage in the business of wholesale selling of flour and supplies to the baking trade. Its shares of stock have always been closely held by the Archbold family and two outsiders, the Archbolds owning 98 per cent thereof.

On June 1, 1925, in order to provide funds for the financing of a warehouse and office, Emma Archbold, mother of Warren Archbold, and an unrelated party, Margaret Allen, paid into the company $16,500.00 for which Emma Archbold received 135 shares of 7% cumulative preferred, non-voting, non-participating stock. Margaret Allen received 30 shares of the same type of stock. On June 1, 1935, Emma Archbold purchased Margaret Allen's 30 shares of preferred stock, making her total holdings 165 shares.

In 1942 Emma Archbold became senile and LeRoy and Warren Archbold, her sons, caused these 165 shares of preferred stock to be transferred to themselves, Warren receiving 83 shares and LeRoy 82 shares. Emma Archbold died in 1956.

On December 5, 1942, Warren transferred and assigned his 83 shares of preferred stock to Blanche, his wife, as a gift. Blanche was never either an officer, director or employee of Archbold & Company, and never held any common stock.

After the death in 1954 of LeRoy Archbold, his shares of preferred stock passed to his wife Eveline. In 1956 these shares were redeemed by Archbold & Company which paid $8,200.00 therefor. This transaction is not involved in the present suit.

As of January 22, 1957, the stockholdings of Archbold & Company were as follows:

OUTSTANDING

| Stockholders | Total Shares | % of total | Common Shares | % of Common | Preferred Shares | % of Pfd. |
|---|---|---|---|---|---|---|
| Warren W. Archbold | 582 | 65% | 582 | 72% | | |
| Blanche Archbold | 83 | 9 | | | 83 | 100% |
| George E. Archbold | 210 | 24 | 210 | 26 | | |
| Wm. H. Young, Jr. | 15 | 2 | 15 | 2 | | |
| Joseph A. Lister | 1 | | 1 | | | |
| | 891 | 100% | 808 | 100% | 83 | 100% |

On January 23, 1957, Archbold & Company redeemed the 83 shares of preferred stock held by Blanche Archbold for $8,300.00. This redemption is the basis of the present controversy.

Dividends on preferred stock at the time of redemption were paid up, though no common stock dividends had been paid for the years 1953 through 1956.

There was no change in the capital structure of the company following the redemptions, nor was there any contraction of the company's business.

In their joint income tax return for the year 1957, the taxpayers did not report any gain on the $8,300.00. Nor did they file the agreement referred to in section 302(c) (2) (A) (iii) of the 1954 Internal Revenue Code with their joint income tax return for that year as required by Treas.Reg. § 1.302–4(a).

The District Director of Internal Revenue subsequently assessed additional taxes on the ground that the $8,300.00 received constituted ordinary dividend income and were taxable at ordinary income rates, instead of at the preferential capital gains rates. The additional tax in the amount of $2,394.86 was paid on June 8, 1959, and a claim for refund was filed on July 24, 1959. During April and July, 1960, while the claim for refund was being considered, plaintiffs offered to file an amended tax return for the year 1957, appending the agreement specified in section 302(c) (2) (A) (iii) of the Internal Revenue Code of 1954. This offer was refused as not timely. The claim for refund was disallowed on August 24, 1960.

Because of the rules of constructive ownership contained in section 318(a) of the 1954 Code which would impute to Blanche stock held by her husband and son, and because of the regulations of the Treasury on stock and its redemption, in order to qualify for the capital gains treatment of section 302(a) the plaintiffs must show that the redemption of the $8,300.00 preferred stock was not essentially equivalent to a dividend. (Section 302(b) (1).) That section 318(a) of the 1954 Code applies, is manifest from the details of the stipulation, the essential terms of which have been referred to herein.

In determining whether a distribution in redemption of stock is essentially

equivalent to a dividend, the 1957 case of Ferro v. Commissioner of Internal Revenue, 242 F.2d 838, in the Third Circuit, is enlightening. In that case the court said at page 841:

"The relevant circumstances to consider in determining the net effect of the distribution include the following: (1) whether the distribution resulted in any substantial change in ownership or control; (2) whether there was any contraction in corporate business; (3) whether the action was initiated by the corporation or by a shareholder; (4) whether there were earnings or profits available and the effect on corporate finances as compared with a regular dividend.

"The declaration of a true dividend leaves the ownership and control of a corporation unaffected. Where a distribution of corporate assets likewise leaves proportionate interests unchanged, that circumstance has been termed "the most significant factor in finding dividend equivalence." Our own cases have consistently reflected the importance of substantially identical holdings before and after the distribution in question. Brown v. Commissioner of Internal Revenue, 3 Cir., 1935, 79 F.2d 73, 74; Smith v. United States, 3 Cir., 1941, 121 F.2d 692, 695; Boyle v. Commissioner of Internal Revenue, 3 Cir., 187 F.2d 557, 560, certiorari denied, 1951, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618. See also Treas.Reg. 111, § 29.115–9." (Footnote omitted).

It seems certain from the stipulated facts that after the redemption of Blanche Archbold's preferred stock, the "proportionate interests" remained unchanged. This is manifest from the following analysis of the stock holdings of Blanche Archbold before and after the redemption in question, taking into consideration the constructive ownership rules of section 318(a).

|  | Before | | After | |
|---|---|---|---|---|
|  | Shares | Per Cent of total | Shares | Per Cent of total |
| Preferred (Nonvoting) | 83 | ( 9%) | 0 | |
| Common (Voting) | | | | |
| Shares of Husband | 582 | (65%) | 582 | (72%) |
| Shares of Son | 210 | (24%) | 210 | (26%) |
| | 875 | (98%) | 792 | (98%) |

In determining the question of change in ownership and control in a corporation, section 302(c) makes the constructive ownership provisions of section 318 (a) apply unless the distributee files an agreement as set forth in section 302(c) (2) (A) (iii).

There are two issues to be resolved in determining the result of the suit herein —first, whether the $8,300.00 paid in redemption of the 83 shares of preferred stock held by Blanche Archbold were effectively a dividend and thus taxable as normal income, and second, whether the request of the plaintiffs to file the agreement referred to hereinbefore, with an amended tax return, was timely made and thus should be allowed.

As to the first question, in view of all of the facts, it would appear to this court that the amount paid to redeem the preferred stock in dispute was essentially equivalent to a dividend, within the meaning of section 302(b) (1) of the code, and hence taxable as ordinary income. The four part test set forth in

Ferro v. Commissioner of Internal Revenue would seem determinative. There was no change in ownership or control by the redemption; by stipulation there was no contraction of the business resulting therefrom; there is no evidence as to the initiation of the redemption, and in so closely held a corporation such evidence would not be significant; and it has been stipulated that the corporation, during the period in question, had earned surplus in excess of $200,000.00 which was available for dividend distribution. It being clear that the effect of a distribution, rather than its motive, measures its tax impact (Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945); Kessner v. Commissioner, 248 F.2d 943 (3d Cir. 1957)), the redemption must be treated as ordinary income. There is no evidence of any plan for partial liquidation of the corporate interests which might have been urged to affect the nature of the redemption, nor is there any other compelling reason for treating it other than as ordinary income.

■ There remains the question of whether the 1960 request to file the agreement referred to in section 302(c) (2) (A) (iii) should have been granted. The exemption therein provided protects the Government from any attempt on the part of a taxpayer to relinquish an interest in a corporation for the three year period of the statute of limitations and then re-acquire this interest after having taken advantage of the capital gains provisions of the code. The protection, as afforded by the code and the relevant regulation, puts the Government on notice so that it may watch for any re-acquisition of the corporate stock within a ten year period, and extends the normal three year statute of limitations to one year after notification by the taxpayer of a new acquisition.

The allowance of an extension such as that requested by the plaintiffs herein would open the door to taxpayers to gamble on the probability of their returns being audited within the three year statute of limitations, by allowing the filing of the agreement if the gamble was lost, without any sanction for failure to carry out the requirements of the statute. It would seem that the refusal of the Commissioner to permit the filing of an amended return with the agreement was justified and it is so held.

Let this stand as findings of fact and conclusions of law.

Submit an order.