FEHRS FINANCE COMPANY, Appellant,
Cross-Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Appellee, Cross-Appellant.

Nos. 72–1638, 73–1068.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Nov. 6, 1973.

William P. Sutter, Chicago, Ill., for Fehrs Finance Co.

Michael L. Paup, Atty., Tax Div., Dept. of Justice, Washington, D. C., for the Commissioner.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

The focal point of this controversy concerns the basis attributable to certain stock in the hands of the acquiring corporation in connection with a redemption of stock through the use of related corporations pursuant to 26 U.S.C. §§ 304(a) and 362(a)(2).

Our task is to review the decision of the United States Tax Court [1] wherein, after an extensive examination of the facts and the several sub-issues, the court determined that the basis of the stock in question was zero since the transferors had recognized no gain on the transfer for the tax year in question.

We affirm the Tax Court in all respects and set out only those facts that become necessary to a determination and explanation of the issues.

The transaction which began this case is not complex. Mr. and Mrs. Fehrs owned all of the stock of Fehrs Rental Corporation (Rental). Mr. Fehrs gave a small portion of his stock to his wife, son-in-law, daughters and grandchildren. Approximately two months thereafter Fehrs Finance Company (Finance) was newly incorporated with two of the Fehrs' daughters as sole shareholders. Mr. and Mrs. Fehrs then transferred all of the remaining Rental stock to Finance in return for Finance's promise to pay to the Fehrs annuities totaling $70,000 per year for their lives. Finance immediately resold the Rental stock to Rental in exchange for $100,000 in cash and an unsecured promissory note in the sum of $625,000.

The Tax Court held that Finance realized a taxable gain of $100,000 in 1965 (the cash received in 1965) since its basis was zero.[2] The parties stipulated

---

1. The Tax Court opinion is reported at 58 T.C. 174 (1972). Our jurisdiction is conferred by 26 U.S.C. § 7482(a).

2. An increased basis for gift taxes paid by Mr. and Mrs. Fehrs was allowed by the Tax Court. The same will be later discussed.

that the basis of the stock in the hands of Mr. and Mrs. Fehrs was zero. Finance (taxpayer) contends that Mr. and Mrs. Fehrs realized a capital gain on the transfer which, in turn, increased the basis of the stock in the hands of taxpayer, Finance. The Tax Court disagreed. We agree with the Tax Court.

The parties do not quarrel with the Tax Court's characterization of the foregoing transaction as a redemption through the use of related corporations. 26 U.S.C. § 304(a).

According to § 304 [3] the acquiring corporation (Finance) must treat the stock acquired as a contribution to its capital.

When the stock in question has been treated as a contribution to capital, the basis of that stock in the hands of the transferee (Finance) is the same as it would be in the hands of the transferor (the Fehrs), increased by the amount of gain recognized to the transferor on the transfer.[4]

It becomes necessary due to the inter-workings of sections 304 and 362 of the Internal Revenue Code to determine whether or not the Fehrs realized any gain on the redemption. If they did not, the basis of the Rental stock in the hands of Finance would be zero; i. e., the substituted basis of Mr. and Mrs. Fehrs.[5] If they realized a gain, the basis of the Rental stock to Finance would be increased by the amount of that gain. Hence, Finance's gain on resale would be less.

Only gain realized by the Fehrs on a sale or exchange (capital gain) will allow Finance to receive the "stepped-up" basis for which it argues. If the transaction gave rise to dividend or ordinary income to the Fehrs it would not affect Finance's basis.

Finance advances two theories, either of which it says will support the assertion that the transaction was an exchange giving rise to capital gain to the Fehrs, and therefore increasing Finance's basis in the stock. The two theories are found in 26 U.S.C. §

---

3. Sec. 304. Redemption through use of related corporations
  (a) *Treatment of certain stock purchases.*—
  (1) *Acquisition by related corporation (other than subsidiary).*—For purposes of Sections 302 and 303, if—
  (A) one or more persons are in control of each of two corporations, and
  (B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,
then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.
    *     *     *     *     *

4. Section 362(a) states:
  (a) *Property acquired by issuance of stock or as paid-in surplus.*—If property was acquired on or after June 22, 1954, by a corporation—

  (1) in connection with a transaction to which section 351 (relating to transfer of property to corporation controlled by transferor) applies, or
  (2) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer.
  (b) *Transfers to corporations.*—If property was acquired by a corporation in connection with a reorganization to which this part applies, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer. This subsection shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the exchange of stock or securities of the transferee (or of a corporation which is in control of the transferee) as the consideration in whole or in part for the transfer.

5. The basis of the Rental stock in the hands of Mr. and Mrs. Fehrs was stipulated to be zero.

302(b)(1) and (3) [6] and will be discussed separately.

## I.

*Dividend Equivalency*

The essence of 302(b)(1) is that a redemption will be treated as an exchange if it "is not essentially equivalent to a dividend." Paramount to the dividend equivalency test are several preliminary rules which we must consider.

██ To qualify for the preferred treatment of 302(b)(1) the redemption "must result in a meaningful reduction of the shareholder's proportionate interest in the corporation." United States v. Davis, 397 U.S. 301, 313, 90 S.Ct. 1041, 1048, 25 L.Ed.2d 323 (1970). It is settled that the attribution rules of section 318(a)[7] apply to the stock ownership interest when 302(b)(1) dividend equivalency is in question. *Davis, supra* at 305–307, 90 S.Ct. 1041.

█ Determination as to whether or not the redemption had a "business purpose" is no longer a relevant inquiry regarding dividend equivalency under 302(b)(1). *Davis, supra* at 312, 90 S. Ct. 1041. Johnson v. United States, 434 F.2d 340, 343 (C.A.8 1970); Wright v. United States, 482 F.2d 600, 608–609 (C.A.8 1973).

█ The Tax Court recognized the above guidelines and concluded:

Thus, insofar as it is relevant in determining the question of dividend equivalence in this case, we conclude that the attribution rules require that Mr. Fehrs must be treated as continuing in actual control of Rental after the transaction here in issue. (cita-

tion omitted) We hold that the redemption cannot be treated as an exchange under section 302(b)(1). 58 T.C. at 188.

We agree. The judgment as to whether a redemption is "not essentially equivalent to a dividend" turns on the facts of each case. *Wright, supra* 482 F.2d at 606. Viewing this case in the setting which the attribution rules dictate, the only stock which is not constructively owned by the Fehrs is the fifteen shares given by Mr. Fehrs to his son-in-law. See 58 T.C. at 176. Even after the resale of the Rental stock back to Rental, and the subsequent cancellation of that stock diminishing the Fehrs ownership interest from 98.2 to 88.69 percent, the proportionate interest of these stockholders in this corporation was not meaningfully reduced. *Davis, supra* 397 U.S. at 313, 90 S.Ct. 1041. It is not necessary for us to determine whether the Fehrs post-redemption ownership must be measured before or after cancellation of the stock. We agree with the Tax Court that even if we "assume for the sake of argument that the redemption reduced the Fehrs' ownership interest from 98.2 percent to 88.69 percent" the mandates of *Davis* would not be fulfilled. We are not convinced that the Tax Court findings are against the clear weight of evidence or induced by an erroneous view of the law. Commissioner of Int. Rev. v. Ironsport Mfg. and Equip. Co., 478 F.2d 731, 734 (C.A.8 1973); Riss v. Commissioner of Int. Rev., 478 F.2d 1160, 1164 (C.A.8 1973).

*Complete Redemption*

Finance strongly urges that this redemption qualifies as an exchange since

---

6. Section 302 in relevant part states:

(a) *General Rule.*—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) *Redemptions treated as exchanges.*—(1) *Redemptions not equivalent to dividends.*—Subsection (a) shall apply if the

redemption is not essentially equivalent to a dividend.

\*　　\*　　\*　　\*　　\*

(3) *Termination of shareholder's interest.*—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

7. Under section 318 an individual is considered as owning stock held by his spouse, parent, child, or grandchild.

there was a "complete redemption of all of the stock of the corporation owned by the shareholder." 26 U.S.C. § 302 (b)(3). If Finance is to be successful on this point it must show that the provisions of 302(c)(2)(A)[8] have been fulfilled. That section frees a taxpayer from the application of the attribution rules to its redemption provided the three tests are fulfilled.

There is no question that the Fehrs themselves no longer own any Rental stock. Nevertheless, they constructively own those shares owned by their daughters and grandchildren.

Finance asserts that the Fehrs are protected from that constructive ownership in this instance because they have fully complied with the 302(c)(2)(A) criteria.

This appeal concerns only the third proviso of 302(c)(2)(A), which obligates the taxpayer to file an agreement with the Internal Revenue Service. Thereunder the taxpayer promises to notify the IRS of any reacquisition (other than by bequest or inheritance) of stock in the corporation within ten years after the distribution.[9]

The corresponding regulation is Treas.Reg. (1973) § 1.302–4 providing:

Section 302(b)(3) provides that a distribution in redemption of all of the stock of the corporation owned by a shareholder shall be treated as a distribution in part or full payment in exchange for the stock of such shareholder. In determining whether all of the stock of the shareholder has been redeemed, the general rule of section 302(c)(1) requires that the rules of

constructive ownership provided in section 318(a) shall apply. Section 302(c)(2), however, provides that section 318(a)(1) (relating to constructive ownership of stock owned by members of a family) shall not apply where the specific requirements of section 302(c)(2) are met. The following rules shall be applicable in determining whether the specific requirements of section 302(c)(2) are met:

(a) The agreement specified in section 302(c)(2)(A)(iii) shall be in the form of a separate statement in duplicate signed by the distributee and attached to his return timely filed for the year in which the distribution described in section 302(b)(3) occurs. The agreement shall recite that the distributee has not acquired any interest in the corporation (as described in section 302(c)(2)(A)(i) since such distribution, and that he agrees to notify the district director of internal revenue for the district in which such return is filed of any acquisition of such an interest in the corporation within 30 days after such acquisition if such acquisition occurs within 10 years from the date of such distribution.

\* \* \* \* \* \*

When this case was decided the Fehrs had not yet filed the required agreement. Not surprisingly, therefore, the Tax Court held that the mandates of the Code has not been met. Immediately following the Tax Court decision the Fehrs filed the agreement with the Omaha IRS office. Finance now asserts

---

8. That section provides:

(c) *Constructive ownership of stock.—*
(2) *For determining termination of interest.—*

(A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if—

(i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor,

(ii) the distributee does not acquire any such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of such distribution, and

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

9. *Id.*

that this belated filing should be deemed by us to be sufficient.

■ We have carefully considered the cases relied upon by Finance which hold that only "substantial compliance" with 302(c)(2)(A) is required. Cary v. Commissioner, 41 T.C. 214 (1963); United States v. Van Keppel, 321 F.2d 717 (C.A.10 1963); Pearce v. United States, 226 F.Supp. 702 (W.D.N.Y. 1964).. *But see,* Archbold v. United States, 201 F.Supp. 329 (D.N.J.1962), affirmed per curiam 311 F.2d 228 (C.A. 3 1963). We have no disagreement with those cases wherein taxpayers were allowed to file tardy agreements before the law suits were tried. While it is not our function to reconcile other decisions of the Tax Court, Jantzer v. C.I.R., 284 F.2d 348, 355 (C.A.9 1960), we find the instant case clearly distinguishable.

The agreement in this case was not filed until after the Tax Court decision declaring that the Fehrs had not complied with the statute.[10] Finance made no request upon the Tax Court to reconsider its opinion in light of the belated filing.

■■ We are not at liberty to digress from the provisions of the governing statutes merely because.a case may present hard facts. Fearing v. C.I.R., 315 F.2d 495, 499 (C.A.8 1963) (Blackmun, J.). We hold that in this case the filing of the statutory agreement, over six years after the returns were due and only after an adverse decision in the Tax Court, does not substantially comply with section 302(c)(2)(A) of the Internal Revenue Code.

## II.

■ Having determined the Fehrs' redemption scheme does not qualify for treatment as an exchange pursuant to 302(b) we must view it as a distribution of property governed by section 301. 26 U.S.C. § 302(d). The Tax Court properly set out the application of section 301:

Section 301(c)(1) provides in effect that, to the extent that it is made out of the corporation's earnings and profits, the distribution is treated as a dividend and is taxed as ordinary income to the recipient. Section 301(c)(2) goes on to provide that, to the extent that the distribution is not a dividend, it is first applied against the recipient's adjusted basis in the stock, and then, according to section 301(c)(3), the amount which exceeds such adjusted basis is treated as gain from the sale or exchange of property. 58 T.C. at 190.

The Tax Court went on to hold:

(1) The mere forming of the annuity contracts between Finance and the Fehrs in 1965 did not constitute a "distribution of property" for 301 purposes in 1965.

(2) Since the Fehrs received no payments under the annuity contracts in 1965 no property distributions were in fact made within the meaning of 301 for the 1965 tax year.

(3) Since no distribution of property was made to the Fehrs in 1965 they realized no capital gain under 301(c) (3)(A) which could, in turn, be attributed to Finance as a stepped-up basis in the Rental stock. 58 T.C. 174, 191–194.

On the basis of the well reasoned Tax Court opinion, we affirm the determination that no property distribution within the meaning of sections 301 and 317 [11] was made in 1965.

---

10. The present posture of this issue in the case presents some question as to whether this court should consider an issue not squarely faced by the Tax Court. Joslin v. C. I. R., 424 F.2d 1223, 1227 (C.A.7 1970). Our consideration is warranted since no new or more expansive factual determinations need be made. Estate of Byrd v. C. I. R., 388 F.2d 223, 233–234 (C.A.5 1967); Fred-

erick Steel Co. v. C. I. R., 375 F.2d 351, 355 (C.A.6 1967).

11. § 317. (a) *Property.*—For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).

Finance urges that the recent case of Estate of Lloyd G. Bell, ¶ 60.52 P–H T.C. 287 (June 26, 1973) requires a contrary result.

*Bell* involved a sale of stock in exchange for a private annuity. The Tax Court held that gain should have been recognized by the transferor of the stock in the year of the sale. The measure of gain was determined .to be the difference between the adjusted basis of the stock and the actuarial value of the annuity contract. Finance suggests that same philosophy should be applied here and that its basis in the Rental stock should be $552,373.84, that is, the amount of gain properly recognized by the Fehrs under the *Bell* opinion. We do not agree.

We recognize several of the same characteristic distinguishing factors in *Bell* which the Tax Court found in the cases cited by Finance at trial. See 58 T.C. at 191–192.

In *Bell* the Tax Court points out (¶ 60.52 P–H T.C. 287, 288):

> Here, we are dealing with an annuity which is amply secured, not only by the property transferred, but also by a cognovit judgment that would subject all the property of the transferees to attachment without court proceedings.

Moreover, the corporation—obligors involved in *Bell* were clearly viable corporations with several years of operating history.

In the instant case the obligor on the annuity contracts, Finance, is a newly formed corporation with a total capitalization of $100,000 in cash plus an unsecured promissory note of Rental in the principal sum of $625,000. Yet Finance has obligated itself to pay out $70,000 per year. The Tax Court was compelled to say:

> Unlike the recipient of an ordinary promise to make a payment at a certain time in the future, the Fehrses

did not receive anything in 1965 which they could have disposed of even at a substantial discount. 58 T. C. at 191.

We think the *Bell* case is inapposite to the situation which this case presents. Indeed, the more established doctrine of the Tax Court has been that where unsecured private annuities are involved, gain need not be reported in the year of the transfer due to the uncertainty of payment involved. *Bell, supra* at 291 (dissenting opinion); J. Darsie Lloyd, 33 BTA 903 (1936); Commissioner v. Kann's Estate, 174 F.2d 357 (C.A.3 1949) (affirming an unreported decision of the Tax Court).

For all of the foregoing reasons, the basis of the Rental Company stock held by Finance is (under section 362(a)(2) of the Internal Revenue Code) the same as it was in the hands of Mr. and Mrs. Fehrs—zero.

### III.

▮ The final point for consideration on this appeal concerns the argument of the Internal Revenue Service on cross-appeal. IRS attacks that portion of the Tax Court decision modifying the original reported opinion.

Subsequent to the redemption transaction between Finance and Mr. and Mrs. Fehrs the IRS determined that the Fehrs were required to pay gift taxes on the difference between the value of the stock transferred and the value of the annuities. Mr. and Mrs. Fehrs promptly paid the gift tax and filed for refund. See 58 T.C. at 179.

In an unreported memorandum of August 14, 1972, the Tax Court held:

> * * * that the petitioner is entitled to an increased basis in the Rental stock by reason of the gift taxes paid, if such taxes are not refunded before the entry of the decision in this case.

---

(b) *Redemption of stock.*—For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.

The Court awarded the addition to basis pursuant to 26 U.S.C. § 1015(d)(1)(A) which provides in applicable part:

If—

(A) the property is acquired by gift * * * the basis shall be the basis * * * increased (but not above the fair market value of the property at the time of the gift) by the amount of gift tax paid with respect to such gift, * * *

IRS contends that the tax has not been "paid" within the meaning of 1015 since the claim for refund is still pending. For that reason IRS contends that the gift tax cannot be added to basis on a 1015 pretext. The Service also declares that since the Tax Court had no evidence upon which it could premise an independent determination that a gift was in fact made it cannot hold that 1015(d) warrants an increase in basis. No authority is offered by IRS for its contention and we have found none.

The Tax Court said in its unreported memorandum:

There is no indication that the word "paid" in section 1015(d) is to be given anything but its ordinary meaning. In deciding whether a tax was paid within the meaning of other provisions of the tax laws, the courts have examined the facts to find whether the funds transferred to the taxing authority were transferred as security for taxes to be determined in the future or in satisfaction of a tax liability which has already been determined by the taxing authority. Rosenman v. United States, 323 U.S. 658 [65 S.Ct. 536, 89 L.Ed. 535] (1945); Ameel v. United States, 426 F.2d 1270 (C.A.6, 1970); Estate of Benjamin Piller, 29 B.T.A. 799 (1934). If the amount transferred was in satisfaction of such a tax liability, the courts have concluded that a payment was made even though the determination of tax liability was being contested by the taxpayer. Rosenman v. United States, supra; see Ameel v. United States, supra.

A review of the above decisions cited by the Tax Court satisfies us that the decision here has a reasonable basis in law and is warranted by the record.

The judgment of the Tax Court is affirmed.