Edward J. and Violette **FEHRS**

v.

The **UNITED STATES.**

No. 85–75.

United States Court of Claims.

May 18, 1977.

As Modified June 21, 1977.

**44.** *See* note 36 *supra*.

William A. Cromartie, Chicago, Ill., attorney of record for plaintiff; Michael M. Conway and Hopkins, Sutter, Mulroy, Davis & Cromartie, Chicago, Ill., of counsel.

William C. Rapp, Court of Claims Section, Tax Div., U. S. Dept. of Justice, with whom was Acting Asst. Atty.. Gen. Myron C. Baum, Washington, D.C., for defendant. Theodore D. Peyser, Jr., Donald H. Olson and Kenneth R. Pike, Washington, D.C., of counsel.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

COWEN, Senior Judge:

Plaintiffs have moved for summary judgment in the amount of $20,954.83, together with interest and costs as provided by law, representing federal income taxes and interest paid by them on income received in their taxable year ended December 31, 1966. Plaintiffs assert that their income in that year, which was assessed at ordinary income rates, should instead have been taxed as capital gains. Defendant opposes the plaintiffs' motion, arguing that the tax assessment was correct as a matter of law but that a trial is necessary to determine the correct earnings and profits of the distributing corporation formerly owned by plaintiffs in order to allocate the distribution between ordinary income and capital gain. Even if we accept plaintiffs' position, defendant argues that a trial is necessary to determine whether the transactions underlying this suit were motivated principally by the purpose of avoiding income taxes. For the reasons set forth below, we grant plaintiffs' motion in part, but remand the

case for further proceedings on the tax-avoidance issue.

The financial transaction which gives rise to this controversy may be briefly described. In 1964 the plaintiffs owned all 1,380 outstanding shares of the Fehrs Rental Corporation (Rental). On December 21, 1964, Mr. Fehrs gave 241 shares of the corporation to his wife, son-in-law, two daughters and grandchildren.[1] About 2 months later, on February 28, 1965, the plaintiffs' daughters formed the Fehrs Finance Company (Finance Company) for the purpose of purchasing the commercial paper generated by Rental; plaintiffs' two daughters were Finance Company's sole shareholders.

On March 1, 1965, Mr. and Mrs. Fehrs transferred all their remaining stock to the newly formed Finance Company in return for Finance Company's promise to pay them perpetual annuities of $70,000 a year, of which $62,000 was to be paid to Mr. Fehrs and $8,000 was to be paid to Mrs. Fehrs. On the same day, Finance Company sold the stock back to Rental, in exchange for $100,000 and an unsecured promissory note for $625,000. Thus, after the transactions were complete, the Fehrs had divested themselves of all their Rental stock; the amount of Rental stock had been greatly reduced, and the 221 remaining Rental shares had been placed exclusively in the hands of the Fehrs' daughters, son-in-law, and grandchildren. Finance Company had been given substantial working capital and remained in the daughters' hands. Mr. Fehrs retained no managerial or voting interest in either corporation after the transactions were completed.

All of the transactions were accomplished upon advice of counsel and after careful planning. The stated purposes of the deal were: (1) to permit Mr. Fehrs to retire upon a satisfactory income while leaving Rental Corporation "in the family"; and (2) to create adequate working capital for the incipient Finance Company.

In their joint tax returns for 1966, Mr. and Mrs. Fehrs reported the annuity payments received from Finance Company as a "long-term capital gain received in current year." The Internal Revenue Service disagreed, arguing that the annuities represented a "distribution essentially equivalent to a dividend," which is taxable as ordinary income rather than as capital gain. As to Finance Company, the Service categorized the transaction as a "sham" which was in fact a redemption by Rental which gave Finance Company a zero basis in the Rental stock. Therefore, the Service taxed the entire sale proceeds as capital gains received by Finance Company.

Finance Company disagreed, and on May 1, 1972, it sued in the Tax Court to set aside the deficiency determined by the Service. Although Mr. and Mrs. Fehrs had also contested the assessment against them, they were not parties to the suit. The issues decided by the Tax Court were defined only after "a good deal of confusion." Initially, the Internal Revenue Service had contended that the "transfer of stock by Mr. and Mrs. Fehrs was in part a sale and in part a gift to the shareholders" of Finance Company and had assessed a gift tax on the transfers. Also, the assessment by I.R.S. of capital gains tax against Finance Company was without citation to any specific code section. Not until the opening argument at trial did the I.R.S. finally clarify its position by contending that the Finance Company had a zero basis in its Rental stock because of the application of section 304(a) of the Internal Revenue Code. *Fehrs Finance Co. v. Comm'r of Internal Revenue*, 58 T.C. 174, 182–83 (1972).

Section 304(a) of the Internal Revenue Code, also known as the "brother-sister corporation" provision, requires that where the same persons are "in control" of each of two corporations, and one corporation acquires stock in the other from the persons in control, the transaction is "treated as a redemption" and is considered a "contribution to capital" of the acquiring corpora-

---

1. Mrs. Fehrs received 20 shares; William R. Vlcek, plaintiffs' son-in-law, 25 shares; Mrs. Vlcek, 26 shares, and her three daughters, 20 shares each; Elizabeth May, plaintiffs' other daughter, received 110 shares.

tion. Thus, although the Fehrs did not sell their stock to Rental, but to Finance, the transaction was treated as if Rental had originally redeemed its own stock,[2] and since the stock given to Finance Company was a "contribution to capital," Finance received a zero basis in its Rental stock. Although Finance Company was formally an independent corporation not controlled by the Fehrs, plaintiffs were deemed to be in "constructive control" of Finance Company due to the application of section 318 of the Internal Revenue Code, which "attributes" to a taxpayer the stock of his children and grandchildren.[3] Finance Company vigorously disputed the application of these sections to the transaction, but the court held that under the attribution rules, the Fehrs were in control of both Finance and Rental and that section 304 applied to make the entire resale proceeds of Rental stock capital gains in Finance's hands. *Fehrs Finance Co., supra* at 183.

Finance Company presented two other challenges to the tax assessment by I.R.S. First, the company argued that since the application of section 304 qualifies the transaction as a redemption, the rules of section 302 apply. Section 302(b) provides that a redemption will be treated as an "exchange" if the transaction is "not essentially equivalent to a dividend," or is a "substantially disproportionate redemption" with respect to the shareholder. If the transaction had been treated as an exchange under sections 302(b)(1) and (2), it would have meant that Finance received a basis in the Rental stock equal to the price paid the Fehrs, thus greatly reducing the extent of its capital gain. However, the Tax Court found that the transaction *was* essentially equivalent to a dividend *and* also that there was not a substantially disproportionate reduction of interest by the Fehrs (relying again, upon the attribution rules to determine the extent of the Fehrs'

interest in Rental, before and after the sale).

Finance Company had one remaining argument. If it could show that the redemption had been "in complete redemption of all of the stock of the corporation" owned by Fehrs, then Finance could obtain "exchange" treatment and receive the stepped-up basis. I.R.C. § 302(b)(3). For such a complete termination of interest, the normal attribution rules *do not apply* if:

(i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor,

(ii) the distributee does not acquire any such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of such distribution, and

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.—I.R.C. § 302(c)(2)(A)(i–iii)

Since it appeared clear that the Fehrs had qualified under the first two requirements of this provision (section 302(c)(2)(A)(i) and (ii)), the only question remaining was whether they had filed the required agreement. Treasury Regulation section 1.302–4(a), requires that the agreement be filed as part of the income tax return "for the year in which the distribution * * * occurs."[4] Unfortunately for Finance Company's position, Mr. and Mrs. Fehrs had filed no such agreement, even up until the time the Tax Court issued its decision. The court felt this failure to file was determinative, stating that:

---

**2.** For purposes of section 304, it does not matter what Rental eventually did with its stock. The purchase by Finance Company alone was sufficient to constitute a redemption.

**3.** The application of the section 318 rules is specifically mandated by section 304(c).

**4.** The regulation also requires that the distributee filing the agreement retain copies of tax records indicating fully the tax that would have been payable had the redemption been treated as a distribution subject to section 301.

* * * since the agreement required by section 302(c)(2)(A)(iii) has not been filed by Mr. and Mrs. Fehrs, the attribution rules of section 318 are applicable, and the redemption of their stock does not qualify as an exchange under section 302(b)(3). *Fehrs Finance Co., supra,* at 190.

Thus Finance Company had lost all its arguments and the Tax Court rendered a decision in favor of the Government.

Immediately after the Tax Court decision, the Fehrs filed the agreement with the I.R.S. office in their local district. The agreement was accepted by the I.R.S. District Office on October 4, 1972. Soon thereafter, Finance Company appealed to the Eighth Circuit Court of Appeals, which upheld the Tax Court's decision. The Circuit Court affirmed the decision of the Tax Court on all the issues decided by that court. The appellate court also held that the Fehrs had not substantially complied with the filing requirements of section 302(c)(2)(A). With respect to the filing of the agreement after the Tax Court's decision, the Eighth Circuit declared:

> We have carefully considered the cases relied upon by Finance which hold that only "substantial compliance" with 302(c)(2)(A) is required. [citations omitted.] We have no disagreement with those cases wherein taxpayers were allowed to file tardy agreements before the law suits were tried. While it is not our function to reconcile other decisions of the Tax Court * * * we find the instant case clearly distinguishable.
> The agreement in this case was not filed until after the Tax Court decision declaring that the Fehrs had not complied with the statute. Finance made no request upon the Tax Court to reconsider its opinion in light of the belated filing. *Fehrs Finance Co. v. Comm'r of Internal Revenue,* 487 F.2d 184, 189 (1973).

On March 25, 1975, some 2 years after the Eighth Circuit's decision, Mr. and Mrs. Fehrs filed their suit in this court. The action here is based upon a claim for refund which the Fehrs filed on June 30, 1969, and upon which no action was taken until after the filing of their petition. The facts upon which the claim is based are substantially the same as those underlying the *Fehrs Finance* cases with these exceptions: (1) the parties plaintiff are different, and (2) the Fehrs filed their agreement under section 302(c)(2)(A), 2 years before this action was initiated.

I.

Plaintiffs present two significant challenges to the disallowance by I.R.S. of their claim for capital gains treatment of the disputed transaction. For purposes of their motion for summary judgment, both contentions assume it is a fact that the transaction was a redemption within the meaning of section 304(a). But plaintiffs assert that their sale of stock to Finance Company should be classified as an exchange under either of two provisions of Internal Revenue Code section 302, thus qualifying the amounts received by them as capital gain rather than ordinary income.

■ The first and less meritorious of plaintiffs' arguments is that the transaction was a section 302 "exchange" because it was "not essentially equivalent to a dividend." They assert that the distribution qualified as an "exchange" under section 302(b)(1). The long established test as to whether a transaction is equivalent to a dividend was set forth by the Supreme Court in *United States v. Davis,* 397 U.S. 301, 313, 90 S.Ct. 1041, 1048, 25 L.Ed.2d 323 (1970):

> * * * a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. * * *

To determine the extent of the shareholder's "proportionate interest" which has allegedly been reduced, the attribution rules of I.R.C. section 318 will apply. Treas.Reg. §§ 1.302–1(a), 1.302–2(b); *see also United States v. Davis, supra.*

In *Fehrs Finance Co. v. Comm'r of Internal Revenue, supra,* Finance Company argued that its purchase of stock from Mr.

and Mrs. Fehrs was an exchange under section 302(b)(1), entitling the company to receive a stepped-up basis in the stock. To decide this question, it was necessary for the Tax Court to determine whether or not there had been a meaningful reduction in the Fehrs' ownership interest in Rental before and after the stock transfer. The court examined the transaction in great detail, using more than one relevant time frame, and found that under any circumstances there had been no *meaningful* reduction of the Fehrs' interest. *Id.* at 185–86.

We agree with this finding of the Tax Court, and hold that, for purposes of determining the Fehrs' income tax liability in this case, there was no meaningful reduction of their interests. In reaching this conclusion we do not hold that the Tax Court's decision and its subsequent affirmance by the Eighth Circuit collaterally estop plaintiffs in this court. However, the relevant facts before us are substantially the same as those covered by the detailed examination of the Tax Court and are not disputed. On this phase of the case, we adopt the findings of that court and agree that its legal conclusions are correct. Therefore, we decide that the transfer of stock by the Fehrs to Finance Company does not qualify as an "exchange" under section 302(b)(1) of the Code.

Plaintiffs' second argument is that the transfer of stock qualifies as an "exchange" entitling them to capital gains because of the application of section 302(c)(2)(A) of the Internal Revenue Code. Although the Tax Court and the Eighth Circuit both found in *Fehrs Finance Co.* that the Fehrs had not complied with the filing requirements of section 302(c)(2)(A)(iii), plaintiffs assert that these decisions are not determinative of their present claim. Plaintiffs' basis for this contention is that in those cases, the agreement was filed only after the Tax Court had tried and decided the case whereas in this action, the agreement was filed over 2 years before suit was commenced.

Defendant opposes plaintiffs' position, relying on section 302(c)(2)(A)(iii) and particularly Treas.Reg. section 1.302–4(a), which requires the taxpayer to file an agreement with the tax return for the year in which the transaction is completed. Concededly, plaintiffs did not file the agreement until several years after the transaction and therefore, in the defendant's view, section 302(c)(2)(A) does not apply. In order to resolve this dispute, it is necessary to examine the meaning and purpose of the filing requirement as these have been interpreted by the courts.

The long series of judicial decisions which have considered the filing requirement of section 302(c)(2)(A)(iii) began in 1962 with the decision in *Archbold v. United States,* 201 F.Supp. 329, (D.N.J.1962). There, the court ruled that a taxpayer's offer to file an amended tax return including an agreement which, under the Treasury Regulation should have been filed 3 years earlier, was an insufficient compliance with section 302(c)(2)(A). The court held that the I.R.S. could not be compelled to accept a late filing after it had refused to do so and reasoned that the purpose of the filing requirement was to put "the Government on notice so that it may watch for any re-acquisition of the corporate stock within a ten year period * * *." *Id.,* at 332. The court added:

> The allowance of an extension such as that requested by the plaintiffs herein would open the door to taxpayers to gamble on the probability of their returns being audited within the three year statute of limitations, by allowing the filing of the agreement if the gamble was lost, without any sanction for failure to carry out the requirements of the statute. * * *

Although the Third Circuit affirmed the decision *per curiam,* (311 F.2d 228 (1963)), it was only a few months before a different construction of the statute was voiced by other courts. In *United States v. Van Keppel,* 321 F.2d 717 (1963), the Tenth Circuit chose to distinguish *Archbold* and held that a late filing *was* permissible where the I.R.S. had administratively accepted the agreement. In doing so, the court affirmed

a District Court decision which specifically rejected the *Archbold* rationale on the ground that:

> * * * the three-year statute of limitation does not bar recovery of additional taxes upon reacquisition of stock within ten years. * * * The statute does not say the one-year statute of limitation is applicable only if an agreement has been filed. It says the one-year statute of limitation applies if the taxpayer reacquires an interest within ten years.
>
> The essence of § 302(c)(2) together with § 302(b)(3) is to allow capital gains treatment upon complete cessation of interest in a corporation for a period of ten years. A taxpayer should not be deprived of such benefits because of failure to file an agreement. Nor should the taxpayer be permitted to retain these benefits if he reacquires stock within ten years because of failure to file an agreement. *Van Keppel v. United States*, 206 F.Supp. 42, 44 (D.Kan.1962).

A few months later, the Tax Court handed down its decision in *Cary v. Comm'r of Internal Revenue*, 41 T.C. 214 (1963), which analyzed the divergent rationales of *Archbold* and *Van Keppel*. The Tax Court came down squarely on the side of *Van Keppel*. After a detailed examination of the legislative history of section 302(c)(2)(A), the court held that the "primary purpose" of the filing requirement of section 302(c)(2)(A)(iii) was not, as the *Archbold* court had said, to put the Government on notice so as to prevent evasion of the statute of limitations. Instead the Tax Court concluded that the principal purpose of this subsection was to require the taxpayer to keep records which would indicate fully the amount of the tax that would have been payable "had the redemption not been treated as a distribution in full payment of his stock." The court noted that the essential provisions of sections 302(b)(3) and (c)(2) are those requiring a showing that the stockholders' interest in the corporation had completely ceased and that the cessation extended for a period of 10 years. In contrast to these provisions, the court found that the filing requirement is a procedural one which can be satisfied by substantial compliance.

In *Cary*, the court found that "through the inadvertence of someone" the taxpayer did not file the agreement with her returns and not until 2 years later when her returns were audited and the absence of the agreement was called to her attention. On these facts, it was found that the case could be distinguished from *Archbold* on the same grounds which were used in *Van Keppel* to base such a distinction.

After *Cary*, it appeared quite clear that— except in the Third Circuit—the one-year filing requirement would be viewed by the courts as a procedural rather than a substantive one, and that late filing would be permitted under proper circumstances. In *Pearce v. United States*, 226 F.Supp. 702 (W.D.N.Y.1964), it was held that the I.R.S.' refusal to accept an agreement filed one year late (the original had been misplaced) was an abuse of discretion and that the taxpayer was entitled to capital gains treatment on the redemption of his stock.

By the time Finance Company brought its suit in the Tax Court, a discernable trend had been established away from strict compliance with Treas.Reg. 1.302–4(a), as required in *Archbold*, and toward the standard of *substantial* compliance sanctioned in *Van Keppel, Cary* and *Pearce*. However, the Tax Court in *Fehrs* distinguished *Van Keppel* and *Pearce* on the ground that, in those cases, a belated filing was permitted only when it resulted from an "inadvertent failure" to file earlier. Similarly, the Tax Court distinguished *Cary* on the ground that *Cary* permitted only late filing and could not be held to sanction a failure to file before suit (at the time of the Tax Court decision, plaintiffs had still filed no agreement).

As previously stated, the Eighth Circuit affirmed the decision of the Tax Court in the appeal by the Fehrs Finance Company on the ground that the filing of the statutory agreement after an adverse decision by the Tax Court was not a substantial compliance with section 302(c)(2)(A)(iii) of the Code. *Fehrs Finance Co., supra*, 487 F.2d at 189.

A similar set of circumstances provided the focus for another Tax Court decision shortly after the Eighth Circuit's opinion in *Fehrs Finance Co.* was announced. In *Robin Haft Trust v. Comm'r of Internal Revenue,* 62 T.C. 145 (1974), the taxpayer was a trust which had had its stock redeemed by a corporation in the belief that the attribution rules of section 318 were inapplicable to trusts. When the Tax Court, in an earlier decision (61 T.C. 398 (1973)) decided that the attribution rules were applicable the trust filed a section 302(c)(2)(A)(iii) agreement and then petitioned for a rehearing and vacation of the earlier decision. The court denied relief on the ground that the requirement of the statute had not been substantially complied with. The Tax Court listed three factors leading to its decision: (1) the agreements were not filed until 6 years after the proper filing date; (2) questions remained as to the trust's compliance with sections 302(c)(2)(A)(i) and (ii), and (3) the agreements were filed after the case had already come to trial, thus preventing the parties from properly litigating the questions involved in a section 302(c)(2)(A) agreement. With respect to this third factor, the Tax Court made the following observations:

> In justice to both parties, these matters cannot be properly considered at this stage in the litigation. The parties have not had an opportunity to present fully their views on the question of whether filing the agreements at this time constitutes substantial compliance; nor have they had an opportunity to discuss whether a trust can file the agreement described in section 302(c)(2)(A)(iii). *If the petitioners had attempted to file the agreements prior to the trial, then both parties would have been on notice and could have offered any relevant evidence, and the issues could have been examined and discussed fully in their briefs. Robin Haft Trust, supra,* at 148. [Emphasis added.]

■ From our review of the cases cited, we think there are two basic principles which are reflected by the weight of authority in this area. First, we think *Robin Haft Trust* and *Fehrs Finance Co.* must be viewed as standing for the same principle: that the filing requirement is substantially complied with *only* if the agreement is filed *before trial.* Second, we do not think that either *Fehrs Finance* or *Robin Haft Trust* in any way dilutes the viability of the "substantial compliance" rule elucidated in the *Van Keppel* and *Cary* cases. The Tax Court's analysis in *Cary* convinces us that Congress did not intend the filing requirement to be a substantive bar to "exchange" treatment when the other requirements of section 302(c)(2)(A) are met, and where the circumstances mitigate the taxpayer's belated filing.

■ After careful consideration, we have decided that such mitigating circumstances exist in this case. We find that the Fehrs did not file their agreement because they did not, in good faith, believe that their transfer of stock to Finance Company was a redemption. Their belief, moreover, was a reasonable one. The Government apparently did not think the transaction was a redemption because it at first imposed a gift tax upon the transfer. Even as to Fehrs' Finance Company the Government's disallowance of the company's return did not mention the applicability of section 304(a). Had that been done, the taxpayers might have. been put on notice that the I.R.S. considered it necessary for them to file the agreement.

We are mindful of the fact that in *Van Keppel* and *Cary,* the courts found that the failure of the taxpayers to file the agreements earlier was due to "inadvertence" which the defendant characterizes as a mistake of fact, whereas it would argue that the failure to file earlier in this case was due to a mistake of law. We do not think that the taxpayers' rights should turn on the tenuous and often blurred distinction between fact and law. Furthermore, and in spite of the terminology used, we find that the circumstances in *Van Keppel* and *Cary* were substantially similar to those which caused the late filing of the Fehrs' agreement. In *Van Keppel,* the court found that the taxpayers' return claiming

capital gain was filed February 18, 1957, and that when the return was audited in July 1958, it was discovered that she had failed to file the required agreement. In *Cary,* the Tax Court found that plaintiff's return was prepared by competent certified public accountants but that "through the inadvertence of someone," no agreement was attached to the return. The court also found that when "petitioner's 1957 return was audited in 1959 and the absence of the agreement was made known to her, she promptly filed an amended 1957 return attaching the agreement." 41 T.C. at 222. We think that the controlling factor reflected in these decisions is that there was a reasonable justification for the taxpayers' delay, just as there was in the case at bar, and there as here, the taxpayers filed an agreement as soon as they had notice or knowledge sufficient to form a reasonable belief that a filing was necessary.

To rule that plaintiffs did not comply with the filing requirement here would have the effect of forcing taxpayers to file the agreement any time a transaction may conceivably be ruled a redemption by the I.R.S., whether or not the taxpayer has reasonable grounds for believing that a redemption occurred. While such an action might be prudent tax planning, it could have adverse consequences. In *Dougherty v. Comm'r of Internal Revenue,* 61 T.C. 719 (1974), it was held that when a taxpayer had made an effective election under section 962,[5] he could not subsequently withdraw the election when he realized that it would be disadvantageous to him. In light of the decision in *Dougherty,* a finding of non-compliance here could put the taxpayer in a virtually untenable position: he would have to file "just in case" the transaction turned out to be a redemption, but if it were not a redemption, he would be bound by the adverse terms of the filing agreement. We think this is too harsh a choice to impose upon a taxpayer.

As the District Court pointed out in *Van Keppel, supra,* 206 F.Supp. at 45, the law provides that if the distributee acquires an interest in a corporation within 10 years from the date of distribution, the statute of limitation which would otherwise bar action against the taxpayer is extended for a period of one year after notice is given to the "secretary or his delegate." The court declared that this provision protects both the Government and the taxpayer regardless of the filing of an agreement.

Although we have concluded that the plaintiffs substantially complied with the filing requirement in this case, we emphasize the narrowness of our holding. We hold only that: (1) where the taxpayer could not reasonably have expected that a section 302(c)(2)(A) filing would be necessary; (2) where the taxpayer files the agreement promptly after he has notice or knowledge sufficient to form a reasonable belief that one is necessary; *and* (3) where the agreement is filed before the issues in question are presented for trial, then the taxpayer will be deemed to have substantially complied with the requirements of section 302(c)(2)(A).

## II.

■ There is one remaining issue which cannot be disposed of on the motions for summary judgment and which must be disposed of by trial. Defendant alleges that one of the principal purposes of Mr. Fehrs' gifts of Rental stock to his wife, children and grandchildren was the avoidance of income tax so that section 302(c)(2)(B) applies. This is one of the alternative contentions which defendant made in its pretrial submissions. If defendant is correct in its contention, the redemption will not qualify as a complete termination of the taxpayer's interest under section 302(b)(3) and as an exchange under section 302.

Plaintiffs will have the burden of proving in a trial that Mr. Fehrs' gifts of stock to

---

5. Although section 962 elections are not, strictly speaking, relevant to the question before us, the principle involved in *Dougherty* —that a taxpayer is bound by his election—was deemed by the court in *Robin Haft Trust* to be relevant to determining substantial compliance with section 302(c)(2)(A). 62 T.C. at 149.

his family members did not have as one of the principal purposes for such gifts the avoidance of income taxes. We recognize that it may be difficult for plaintiffs to prove such a negative conclusion, but we feel that section 302(c)(2)(B) allocates the burden of proof to any taxpayer if the issue is properly raised. *See* Cohen, *"Recent Developments in the Taxation of Private Annuities,"* 16 U.S.C. Tax Inst. 491, 511 (1966); C. Winton and P. Hoffman, *"A Case Study of Stock Redemptions Under Sections 302 and 318 of the New Code,"* 10 Tax L.Rev. 363, 373 (1955).[6]

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is granted to the extent stated; defendant's motion for partial summary judgment is denied and the case is remanded to the Trial Division for further proceedings in accordance with this opinion, including a determination of the amount, if any, plaintiffs are entitled to recover.

---

6. The Internal Revenue Service has ruled that no tax-avoidance purpose existed in some factual circumstances outlined in rulings. *See* Rev.Rul. 56–556, 56–2 C.B. 177; Rev.Rul. 57–387, 57–2 C.B. 225.