OPINION. Aitondeix, Judge: The parties are in agreement that the transaction between Nathan Blum and his brother, Louis A. Blum, was á sale, but they differ as to the details, the petitioner contending that he bought his brother’s partnership interest, and the respondent contending that petitioner bought his brother’s interest in the partnership assets. Petitioner’s argument is to the effect that gain or loss is realized only upon the sale or disposition of the business as such, not from the disposition of the assets in the course of business. The result contended for by petitioner, however, does not follow from his premise. His contention ignores the fact, which can not be denied, that as a result of the transaction between him and his brother he became sole owner of all the assets of the business and that some of those assets were disposed of during the period from November 1 to December 31, 1940. Petitioner’s argument, in a slightly different guise, is in all material respects the same argument that has many times in the past been refuted; that is to say, that where property is acquired as a whole, gain or loss is not realized until it is all disposed of, even though it be disposed of in parcels. Such contentions are inconsistent with the theory of the tax laws, which are designed to levy taxes upon gains and profits of business for annual periods. Heiner v. Mellon, 304 U. S. 271. It is now well settled that where property is acquired as a whole, for a lump sum, and subsequently disposed of a portion at a time, there must be an allocation of the cost or other basis over the several units (except where apportionment would be wholly impracticable) and gain or loss computed and reported upon the disposition of each part. See Santa Maria Gas Co., 10 B. T. A. 1412; O. H. Himelick, 32 B. T. A. 792; Bancitaly Corporation, 34 B. T. A. 494; T. H. Symington & Sons, Inc., 35 B. T. A. 711; cf. Heiner v. Mellon, supra. The cases relied upon by petitioner, among them Commissioner v. Shapiro, 125 Fed. (2d) 532; Thornley v. Commissioner, 147 Fed. (2d) 416, reversing 2 T. C. 220; McClellan v. Commissioner, 117 Fed. (2d) 988, affirming 42 B. T. A. 124; Dudley T. Humphrey, 32 B. T. A. 280; and Williams v. McGowan, 58 Fed. Supp. 692, we think, are not in point. The issue in most of these cases was the taxability of a retiring partner, and the problem was whether that partner’s gain or loss was ordinary or capital. In the McGowan case, the issue was whether the loss sustained by a surviving partner who purchased the interest of his deceased partner and some two weeks later sold the entire business was an ordinary loss or a capital loss. Such is not the problem here, for we are not dealing with the sale of the business by petitioner as an entirety. In none of those cases was the proposition contended for by petitioner, namely, that gain or loss is not realized until sale or disposition of the business as such, even hinted at. What the Commissioner did in the instant case was merely to allocate Nathan Blum’s cost proportionately to the separate assets of the business in the ratio of cost to book value. In doing so, we think the Commissioner acted properly. Petitioner has suggested no other method of allocation which he has demonstrated to be more proper. No attempt was made to place any valuation upon good will, and good will was not carried on the books as an asset. So far as the Commissioner’s determination of the portion of the assets disposed of during the last two-month period of the year is concerned, the only items seriously challenged by petitioners are the collections of the accounts receivable, the inventory turnover, and the loss sustained upon dissolution of the Wimbledon Shirt Co. The Commissioner determined that of the $49,794.49 accounts receivable on October 31,1940, petitioner collected $40,801.57 prior to December 31, 1940. Petitioner testified that this figure was wrong and that he may have collected $20,000- or $25,000 of the accounts, but that he did not know how much was collected. The petitioner could have ascertained from his books exactly what amount of the old partnership accounts receivable he collected during the period of individual operation, and if the evidence had disclosed a sum different from that found by the revenue agent appropriate adjustment could have been made. We are not disposed, however, to accept the offhand statement of the petitioner as sufficient to overcome the correctness of respondent’s determination, based, as it was, on an examination of the books and records. With respect to inventory turnover, it appears to us that the effect of the Commissioner’s determination is to treat all the sales during the last two-month period of the year as having been made from the inventory on hand as of October 31,1940. The only evidence we have is petitioner’s testimony in one instance that “maybe around 35 or 40 percent” and in another instance that “about a third of that inventory” was sold during the period of individual operation. Here again it seems to us that petitioner could have ascertained exactly what merchandise from the old inventory was sold from November 1 to December 31, 1940, so that a proper allocation of cost basis could be made, and, as we stated with reference to the receivables, we are not disposed to accept statements entirely unsupported from the records as sufficient to overcome the respondent’s determination, based, as it was, on the detailed examination of a revenue agent. With respect to the liquidation of the Wimbledon Shirt Co., Nathan testified that he received nothing “because there were no assets there to amount to anything outside of $1,000 worth of machinery.” However, he reported in his 1940 return that he received $5,882, and, when asked if that figure was correct, he stated, “I don’t know. I suppose it is, because the auditor set this up.” We must hold, therefore, that the Commissioner did not err in his determination that Nathan Blum realized $22,779.14 additional income. The only question with respect to the deficiency asserted against Louis A. Blum is whether the deduction of the loss he sustained upon withdrawal from the partnership is precluded by section 24 (b) (1) (A) of the Internal Revenue Code.[1] Both the petitioner and the respondent have agreed that the transaction between Louis and Nathan amounted to a sale of property; and, since it was a sale between brothers, it would seem to fall squarely within the provisions of that section of the code. Petitioner’s contention is that the statute does not apply to a bona fide sale of a partnership interest, notwithstanding it is between brothers. He admits that the scope of the provision is very broad and that he can find no ruling or decision to sustain his position. He states, however, that the history of the provision, which first appeared in the Revenue Act of 1934, shows that its enactment was brought about because of many family transactions which were sham and for the sole purpose of suffering losses for tax purposes, and he suggests that if the statute is applicable to a bona fide sale of a partnership interest, it works such a hardship as to challenge its soundness. Undoubtedly Congress, in enacting the provision in question, was motivated by a desire to prevent intrafamily transactions in property for the sole purpose of sustaining “unreal” losses to be deducted for tax purposes. Almost every reference to the measure in the Committee reports and in debate on the floor of the House and the Senate commented on the fact that many “shocking” instances of such transactions had come to light, and that they constituted a major source of tax avoidance. Committee members in charge of the measure stated their belief that it would “effectively close this loophole.” Nevertheless, the language chosen by Congress to accomplish its purposes was that “no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly, * * * between members of a family.” (Italics ours.) That language is so broad as to admit of no exception. It is true that a hardship may result in particular cases, as in this one, where the transaction is in entire good faith; and there is some indication in the history of the measure that the legislators were not unaware of that fact. However, it was the belief of the drafters that, on the whole, the measure Avould be fair to the great majority of taxpayers. Congress could have provided that no deduction should be allowed in respect of losses from intrafamily transactions unless they were bona fide. That it did not do. It may be that such a qualification would have defeated the purpose of the measure, or it may be that consideration of administrative convenience in collecting the revenues outweighed the occasional hardships which would result in particular cases. But whatever the reasons, the purpose being a legitimate one, the wisdom of the choice of the means is a matter for the decision of Congress, not of the courts. We could not, without indulging in judicial legislation, graft an exception upon the broad measure adopted by Congress. Furthermore, we have held that a loss sustained by the owner of a tire retreading and repairing business as,a result of a sale to his brother was not deductible, Jordan C. Skinner, 47 B. T. A. 624; affd., 138 Fed. (2d) 418, and only recently that a loss sustained by a taxpayer who withdrew his interest in a joint account operated by himself, his mother, and his two sisters as a joint venture was not deductible, Henry V. B. Smith, 5 T. C. 323. Cf. Lewis L. Fawcett, 3 T. C. 308; affd., 149 Fed. (2d) 433. For the reasons stated, we hold that Louis A. Blum is not entitled to any deduction for the loss he sustained as a result of the transaction with his brother. As for the delinquency penalty, the only explanation offered by the petitioner for t'he delay was that he needed some figures from Nathan Blum or his accountant, which “somehow or other” he was unable to obtain. There is no showing in the record as to what efforts petitioner made to obtain the necessary figures or as to why he was unable to obtain them. There is no showing that he exercised ordinary business care and prudence in attempting to file a timely return. We have, therefore, found as a fact that the delay was not due to a reasonable cause, and we accordingly hold that the delinquency penalty was properly asserted by the respondent. Decisions will be entered for the respondent. SBC. 24. ITEMS NOT DEDUCTIBLE. ******* (b) Losses from Sales or Exchanges of Property.— (1) Losses disallowed. — In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly— (A) Between members of a family, as defined in paragraph (2) (D) ; ******* (2) Stock ownership, family and partnership rule. — For the purposes of determining, in applying paragraph (1), the ownership of stock— ******* (D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *