DAVID L. MILLER AND FRANCES A. MILLER, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1538–79, 10923–79.     Filed October 29, 1980.

*Paul S. Bachow,* for the petitioners.
*Howard Philip Newman,* for the respondent.

DAWSON, *Judge:* In these consolidated cases the respondent determined the following deficiencies in petitioners' Federal income taxes:

| Docket No. | Year | Deficiency |
| --- | --- | --- |
| 1538–79 | 1976 | $4,541.00 |
| 10923–79 | 1977 | 757.00 |

The deficiency determined for the year 1976 is based on an adjustment disallowing the deductions of losses sustained from the sales of the interests of petitioner David L. Miller in eight parcels of real estate, and a sale of his stock in Charles Miller, Inc., to his brother, I. Marvin Miller. Respondent has conceded that claimed losses related to sales of property to unrelated third parties are deductible. In dispute, however, are three parcels of real estate and the stock of Charles Miller, Inc., sold by the petitioner to his brother. The deficiency determined for the year 1977 is based on an adjustment disallowing the deduction of the long-term capital loss carryover which resulted from the 1976 sales.

The principal issue for decision is whether the deductions for losses sustained from the sales of stock and real property by the petitioner to his brother, which were ordered by binding arbitration to separate the interests of the hostile brothers, were

properly disallowed by respondent under the provisions of section 267.[1] The resolution of the long-term capital loss carryover issue for 1977 depends upon the disposition of the principal issue.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

David L. Miller and Frances A. Miller (petitioners) are husband and wife who resided in Rydal, Pa., when they filed their petitioners in these cases. Their Federal income tax returns for 1976 and 1977 were filed with the Internal Revenue Service Center, Philadelphia, Pa.

David L. Miller (petitioner) and I. Marvin Miller (Marvin) are the natural sons of Charles and Miriam Miller. Charles Miller died in 1954. Under his will, all of his shares of stock in Charles Miller, Inc., being 20 of 21 outstanding shares, were left in equal shares to the petitioner and Marvin. The remaining share was owned by Miriam Miller. The corporation was engaged in the real estate and insurance brokerage business. Also left in equal shares to petitioner and Marvin was certain real estate located at 2254 North Broad Street in Philadelphia, which was the location of the principal office of the corporation. After certain specific bequests to family members, the balance of Charles Miller's property was left in trust to his widow.

Petitioner and Marvin jointly purchased additional parcels of real estate in Philadelphia. This additional real estate, the stock in the corporation, and the real estate distributed under the Will of Charles Miller later became the subject of a dispute between the brothers.

Petitioner was a student when his father died. He then worked part-time in the family business. Subsequently, he became a lawyer and has engaged in the practice of law. Marvin had been active in the family business before his father's death and has remained active in the business until the present time.

In January 1971, a serious dispute arose between the brothers resulting from allegations by the petitioner that Marvin had

---

[1] All section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.

improperly used funds collected on behalf of third parties in order to cover losses in the operation of the family business. By October 1971, the relationship between them became so strained that they could not mutually resolve their differences. They then retained arbitrators, who subsequently decided that the only way to end the dispute between the brothers was to enter into a binding award by the terms of which the petitioner would be required to sell to Marvin three parcels of real estate and his stock in the corporation.

On July 24, 1973, the arbitrators issued their report under the terms of which the brothers would sever their property interests as of that date. Both brothers took exceptions to the report, and on October 2, 1973, the arbitrators issued a supplemental report.

During the negotiation period, the brothers did not see each other socially and rarely spoke. Their strained relationship continued. They did not trust each other. Although petitioner is an attorney specializing in real estate and Marvin is in the real estate business, neither has referred any business to the other for several years.

Notwithstanding the issuance of the arbitrators' supplemental report, the brothers refused to abide by its terms until December 29, 1976, when, with certain modifications, the petitioner sold his stock in Charles Miller, Inc., to Marvin and his interests in the parcels of real estate at 2254 North Broad Street, 2222 North 15th Street, and 1248 W. Hazzard Street, all located in Philadelphia.

Petitioner has never reacquired an interest in the stock or properties he sold to Marvin. He has no control, directly or indirectly, over Marvin or the assets he sold to him.

On his Federal income tax return for 1976, the petitioner claimed a long-term capital loss of $4,999 and three ordinary losses of $331, $2,274, and $382, totaling $2,987, resulting from the sales of the stock and the properties to his brother, Marvin.

In his notice of deficiency for 1976, the respondent disallowed the claimed deductions for the losses on the ground that they were not allowable under the provisions of section 267.

OPINION

The issue here involves the application and interpretation of section 267,[2] which disallows deductions for losses sustained from sales or exchanges of property between certain related parties.

Petitioner contends that section 267 does not prohibit the deductions for the losses he claimed on the sales to Marvin because the disallowed losses do not come within the intent or scope of section 267. He argues that (1) his relationship with Marvin was so hostile they were no longer "brothers"; (2) section 267(c)(4) refers not only to a connection established by birth, but also requires the presence of a "family relationship"; (3) section 267(c)(4) merely creates a rebuttable presumption that brothers by birth are within the ambit of section 267(a)(1); (4) the decision in *McWilliams v. Commissioner*, 331 U.S. 694 (1947), does not preclude a "family hostility" exception to section 267; and (5) some courts have created an exception to the family attribution rules of section 318 where the family members to the transactions were hostile. Respondent counters with arguments that (1) the plain language and intendment of section 267 precludes a "family hostility" exception; (2) there is an insufficient parallel between the provisions and legislative history of section 318 on the one hand and section 267, on the other; (3) all of the evidence, oral and documentary, relating to hostility between the petitioner and his brother should be treated as inadmissible because it is irrelevant in the application of section 267; and (4)

---

[2]SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

(1) LOSSES.—In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

\* \* \* \* \* \* \*

(b) RELATIONSHIPS.—The persons referred to in subsection (a) are:

(1) Members of a family, as defined in subsection (c)(4);

\* \* \* \* \* \* \*

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—For purposes of determining, in applying subsection (b), the ownership of stock—

\* \* \* \* \* \* \*

(2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

\* \* \* \* \* \* \*

(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

no deduction for a loss sustained from a sale or exchange of property between brothers is allowable under these circumstances.

We agree with respondent. In construing the language of section 267, its plain and obvious meaning should be followed. The phrase "no deduction shall be allowed" is clear. It means that no exceptions, not expressly provided for in section 267, are allowed.

The forerunners of section 267(a)(1) were section 24(a)(6) of the Revenue Act of 1934, 48 Stat. 691, and its cognate section 24(b)(1)(A) of the Internal Revenue Code of 1939. Prior to 1934, there was a fertile field for phantom sales and exchanges with the sole purpose of creating tax losses in transactions between related individuals. The problems of proof in cases involving intimate family relations presented extraordinary difficulties. Accordingly, since the property remained within the same family group after sale, Congress decided to impose an absolute prohibition against deduction in respect of such transactions, irrespective of whether the sale was bona fide, voluntary or involuntary, or direct or indirect. H. Rept. 704, 73d Cong., 2d Sess. 23 (1934), 1939–1 C.B. (Part 2) 554; S. Rept. 558, 73d Cong., 2d Sess. 27 (1934), 1939–1 C.B. (Part 2) 586. In *Blum v. Commissioner*, 5 T.C. 702 (1945), this Court held that a loss from the sale of a partnership interest from one brother to another was not deductible. We concluded that it was irrelevant whether or not the sale was bona fide and characterized the prohibition as absolute in its reach. We said (5 T.C. at 711–712):

It is true that a hardship may result in particular cases, as in this one, where the transaction is in entire good faith; and there is some indication in the history of the measure that the legislators were not unaware of that fact. However, it was the belief of the drafters that, on the whole, the measure would be fair to the great majority of taxpayers. Congress could have provided that no deduction should be allowed in respect of losses from intrafamily transactions unless they were bona fide. That it did not do. * * * We could not, without indulging in judicial legislation, graft an exception upon the broad measure adopted by Congress.

See also *Zacek v. Commissioner*, 8 T.C. 1056 (1947).

The scope of section 24(b)(1) of the 1939 Code was thoroughly considered by the Supreme Court in *McWilliams v. Commissioner*, 331 U.S. 694 (1947), which emphasized its broad sweep. It stated (pages 699–700):

Section 24(b) states *an absolute prohibition—not a presumption*—against the allowance of losses on any sales between the members of certain designated groups. *The one common characteristic of these groups is that their members, although distinct legal entities, generally have a near-identity of economic interests.* It is a fair inference that even legally genuine intra-group transfers were not thought to result, usually, in economically genuine realizations of loss, and accordingly that Congress did not deem them to be appropriate occasions for the allowance of deductions.

The pertinent legislative history lends support to this inference. The Congressional Committees, in reporting the provisions enacted in 1934, merely stated that "the practice of creating losses through transactions between members of a family and close corporations has been frequently utilized for avoiding the income tax," and that these provisions were proposed to "deny losses to be taken in the case of [such] sales" and "to close this loophole of tax avoidance." Similar language was used in reporting the 1937 provisions. Chairman Doughton of the Ways and Means Committee, in explaining the 1937 provisions to the House, spoke of "the artificial taking and establishment of losses where property was shuffled back and forth between various legal entities owned by the same persons or person," and stated that "these transactions seem to occur at moments remarkably opportune to the real party in interest in reducing his tax liability but, at the same time allowing him to keep substantial control of the assets being traded or exchanged."

We conclude that the purpose of §24(b) was to put an end to the right of taxpayers to choose, by intra-family transfers and other designated devices, their own time for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted.

We are clear as to this purpose, too, that its effectuation obviously had to be made *independent of the manner in which an intra-group transfer was accomplished,* * * *

[Fn. refs. omitted; emphasis supplied.]

Subsequently, the courts have rejected attempts to challenge the broad scope of section 267 by refusing to create an exception for "involuntary" sales. See *Merritt v. Commissioner*, 400 F.2d 417 (5th Cir. 1968), affg. 47 T.C. 519 (1967); *Hassen v. Commissioner*, 599 F.2d 305 (9th Cir. 1979), affg. 63 T.C. 175 (1974).

The main thrust of petitioner's argument is that the hostile relationship between himself and Marvin disqualified them as "brothers" within the meaning of section 267(c)(4). He asserts that "the term family implies friendly, closeness and intimacy." This conclusory statement is unsupported in fact and law. He also asserts that section 267(c)(4), which defines the term "family," does not include the entire definition of that term, and therefore the Court must examine whether a "family relationship" existed between the brothers. This points out the flaw in petitioner's argument. After conceding that the Court should

not investigate the underlying facts of the sale to determine whether it is bona fide, the petitioner argues that we should investigate those same facts to determine whether a "family relationship" exists between the brothers. Such an examination is neither necessary nor required. The parties have stipulated that the petitioner and Marvin are the natural children of Charles and Miriam Miller. That makes them "brothers," and the absolute prohibition of section 267(a)(1) denies the deductions of the losses sustained from the sales of the stock and real property between them.

Petitioner has cited no authority indicating that he and Marvin are not "brothers" within the meaning of section 267(c)(4). In defining the term "family," Congress merely listed terms, such as "brother" and "sister," without defining them. Applying the ordinary rules of statutory interpretation, we think Congress intended their plain and obvious meaning. Certainly there is no indication in the legislative history of the statute that Congress contemplated anything other than a blood relationship being required to activate section 267. Funk & Wagnalls, Standard College Dictionary (1965) defines "brother" as "a male individual having the same parents as another."

We reject the petitioner's argument that section 267(c)(4) establishes merely a rebuttable presumption that "brothers by birth" are within the reach of section 267(a)(1). This is contrary to the views expressed by the Supreme Court in *McWilliams v. Commissioner*, 331 U.S. 694 (1947), where it is stated that the forerunner of section 267 contains an "absolute prohibition" and not a presumption against the allowance of losses on any sales between members of certain designated groups. This by its terms includes brothers. Petitioner asserts that the refusal of the Supreme Court to read an exception into the statute in that case means that there are situations where an exception to the statute will be found. We disagree. It does not logically follow from the Supreme Court's failure to grant an exception to conclude that such exceptions exist.

The petitioner also argues that the term "brother" requires not only a blood relationship, "but a finding of social or economic affinity as well." He contends that the rationale behind the cases disallowing a deduction in similar situations is that the relationship between family members arises to some kind of unity of interest. He then argues that the record demonstrates "hostili-

ty" which in turn demonstrates that the unity of interest does not exist. Again we disagree. First, this interpretation of the term "brother" is an unsupported conclusion. Second, petitioner has failed to carry his burden of showing a lack of family unity throughout these transactions. The record shows that the dispute between the brothers was handled by and between members and close friends of the family and that, when available, resort to litigation was avoided in order to protect the family business. Third, although the petitioner recognizes the rationale of Congress in implementing section 267, he ignores the method which Congress chose to enforce that intent. Congress obviously did not want the courts to face the difficult task of looking behind the sales. Instead, Congress made its prohibition absolute in reach, believing that this would be fair to the great majority of taxpayers. *Blum v. Commissioner*, 5 T.C. 702, 711–712 (1945).

Finally, the petitioner points out that a "family hostility" exception to the attribution rules of section 318 has been recognized in some cases. See, e.g., *Estate of Squier v. Commissioner*, 35 T.C. 950 (1961); *Robin Haft Trust v. Commissioner*, 510 F.2d 43 (1st Cir. 1975), vacating and remanding 61 T.C. 398 (1973). Based on these two cases, he contends that a parallel exists between sections 318 and 267. We disagree. Section 318, in relevant part, provides that an individual shall be treated as the owner of shares of stock owned by certain related parties for the purpose of determining whether the distribution of property in exchange for stock is to be treated as a dividend or a sale. In the *Squier* case, this Court looked to all of the facts and circumstances surrounding the transaction and concluded that a sale had occurred. One of the factors considered was the "hostility" between the two parties who were related within the meaning of the statute. Subsequent to the opinions in *Squier* and *Bradbury v. Commissioner*, 298 F.2d 111 (1st Cir. 1962), affg. a Memorandum Opinion of this Court, the Supreme Court decided *United States v. Davis*, 397 U.S. 301 (1970), in which it held that the attribution rules are applicable for purposes of determining whether a distribution is essentially equivalent to a dividend under section 302(b)(1). That holding was later followed in other cases. See *Fehrs Finance Co. v. Commissioner*, 58 T.C. 174 (1972), affd. 487 F.2d 184 (8th Cir. 1973); *Sawelson v. Commissioner*, 61 T.C. 109 (1973).

In the *Robin Haft Trust* case this Court said that "we believe that in view of the Supreme Court's opinion in *Davis*, the petitioners' reliance upon *Squier* and *Bradbury* is misplaced, and we hold that the applicability of the attribution rules is not affected by the circumstances [family fight] which led to the redemption." 61 T.C. at 403. This conclusion was followed by *Niedermeyer v. Commissioner*, 62 T.C. 280, 283 (1974). Later on in the appeal of the *Robin Haft Trust* case, the Court of Appeals for the First Circuit reiterated the doctrine of *Squier*, i.e., "family discord could belie the community-of-interest rationale of the attribution rules and was thus a relevant circumstance in determining dividend equivalency under [302](b)(1)." 510 F.2d at 46. Thus, it thought that the *Davis* decision may have weakened, but did not eliminate, the family fight argument in mitigation of section 318 attribution under section 302(b)(1).

Regardless of whether our views or those of the First Circuit are accepted with respect to family hostility in the application of section 318 to section 302, the legislative and judicial history of section 267 contains no exceptions to the application of the attribution rules in circumstances that require its use. In applying the provisions of section 267 the courts have repeatedly held that Congress intended an "absolute prohibition" against recognizing losses in transactions between related parties. This interpretation has been ironclad.

We think it is significant that section 1.302-2(b), Income Tax Regs., provides that all the facts and circumstances, including attribution, must be considered in determining whether section 302(b)(1) applies. There is no parallel provision in the regulations relating to section 267.

In our judgment it would violate the intent Congress manifested in enacting section 267 for us to create a "family hostility" exception applicable to that section. That is precisely what the courts were talking about in the statements previously quoted from the *McWilliams* and *Blum* opinions. We think the prior refusal of the courts to narrow the reach of section 267 makes it illogical to apply the rationale of a different section (section 318), enacted for a different purpose, as justification for a new interpretation of section 267. Since the purpose of sections 302 and 318 and the nature of the remedy chosen by Congress are different from those chosen for section 267, we reject the petitioner's contention that they are parallel.

Accordingly, for the reasons previously stated, we hold that no deductions for losses sustained from sales or exchanges of property, directly or indirectly, between brothers are allowable, irrespective of the existence of hostility between them. It therefore follows that the petitioner is not entitled to a long-term capital loss carryover to the year 1977.

To reflect the concessions made by the respondent and our conclusion with respect to the disputed issue,

*Decisions will be entered under Rule 155.*