JOHN D. DEMPSEY AND KAREN J. DEMPSEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dempsey v. Commissioner
Docket No. 7699-80.
United States Tax Court
T.C. Memo 1982-580; 1982 Tax Ct. Memo LEXIS 173; 44 T.C.M. (CCH) 1319; T.C.M. (RIA) 82580; September 30, 1982. *173 Petitioners used one room in their house exclusively for practice and rehearsals in connection with their trades or businesses as employees of the University of Rhode Island and the Rhode Island Philharmonic Orchestra. Held: Petitioners did not use this room as their principal place of business for each of their trades or businesses and so may not deduct any of their expenses and depreciation for this room. Sec. 280A, I.R.C. 1954. John D. Dempsey and Karen J. Dempsey, pro se. Peter J. Panuthos, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $250. The issue for decision is whether petitioners meet the requirements of section 280A(c)(1)[1] so as to entitle them to a deduction for business *175 use of part of their home and, if so, whether section 280A(c)(5) requires the deduction to be reduced. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners John D. Dempsey (hereinafter sometimes referred to as "John") and Karen J. Dempsey (hereinafter sometimes referred to as "Karen"), husband and wife, resided in North Kingstown, Rhode Island. John was employed as a professor in the Music Department of the University of Rhode Island (hereinafter sometimes referred to as "the University") throughout 1977. As part of his duties as a professor in the Music Department, he performed as a musician with the University of Rhode Island String Quartet (hereinafter sometimes referred to as "the Quartet"). John also was employed as a performer with the Rhode Island Philharmonic Orchestra (hereinafter sometimes referred to as "the Orchestra") in 1977. In 1977, Karen was employed by the University *176 as a performer with the Quartet; [2] also she was employed by the Orchestra as a performer. Petitioners set aside a specially equipped room (hereinafter sometimes referred to as "the practice room") in their home for musical practice. A large room was necessary for acoustical purposes because a small room would distort sound and cause a performer to play with a "smaller volume" than is desirable. The practice room occupied about 26 percent of the floor area of the house; it contained music books, a music file, music stands, a file for performance tapes, records and stereo (to hear other professional performers and performances), a special carpet (to inhibit reverberation), a tape recorder (for use by petitioners in criticizing their own practice), a dehumidifier (to protect the instruments in the summer), door locks (for security purposes), a piano (for recital practices), a woodburning fireplace, chairs, a desk, a telephone, and bookshelves (used for music books). Petitioners used the practice room only for violin practice, Quartet rehearsals, and instrument storage. They did not use the practice room to entertain. *177 John did not use the practice room to plan, prepare, or correct assignments in connection with his classes at the University. [3]
*178 Petitioners incurred $1,035.16 in expenses and depreciation for the practice room in 1977. John's duties as professor of music at the University included the teaching of classes in music theory, strings (beginning violin), and chamber music. Also, he was the violin instructor at the University. He used his office at the University to prepare his courses and counsel students. The foregoing took 35 to 40 hours per week. In order to teach properly (especially when teaching violin students individually), he had to be able to perform better than his pupils, which required him to practice--a task he performed in the practice room. His direct involvement with his pupils was the major part of his work load as professor of music at the University; his work with the Quartet was a small portion of his work load. Both John and Karen were violinists in the Quartet. Each of them had to practice in order to be familiar with their parts before rehearsals of the Quartet. Although the Quartet was "in residence" at the University, there was no space in the University that was both available and suitable for individual practice for the members of the Quartet. The entire Quartet practiced *179 or rehearsed together in the practice room about 40 to 50 times a year. The Quartet practiced or rehearsed together in other peoples' homes, but not as often as in petitioners' home. The Quartet gave two formal concerts per year at the University. Each year the Quartet also presented a workshop at the University or in a public school. During 1977, the Quartet gave about 10 performances altogether. In 1977, John was first violinist and Karen was head of the second violin section in the Orchestra. They performed about eight concerts for the Orchestra in 1977. Generally there were three to five rehearsals for each performance. Under the union contract, they were paid for each performance and rehearsal they attended. The Orchestra gave its performances and held many of its rehearsals at the Veterans Memorial Auditorium in Providence, Rhode Island. Both John and Karen were expected to have as much command of the music as possible at the start of each rehearsal and each performance. Karen generally practiced in the practice room in the morning and John in the evening and on the weekend. Each of them generally practiced two or more hours a day in the practice room. No employer *180 of either John or Karen has provided a practice facility such as the practice room. OPINION Section 280A[4] forbids allowance of deductions for expenses of an office in the home unless the taxpayer surmounts a series of hurdles.
*181 Respondent asserts that petitioners have failed to surmount several of these hurdles in that they have failed to establish that (1) they used the practice room "on a regular basis as their principal place of business", (2) their use of the practice room was for the convenience of their employer, and (3) they derived gross income from their use of the practice room. Respondent concedes the amount of petitioners' expenses and depreciation attributable to the practice room and also concedes that petitioners did not use the practice room for nonbusiness purposes. Petitioners maintain that (1) the practice room was "the principal place of business for each of them in their music performance business", (2) their use of the practice room was for the convenience of their employers since practice was essential and none of their employers provided a place to practice, and (3) a substantial portion of their earnings are attributable to their use of the practice room. We agree with respondent's first contention. On the basis of the record in the instant case, it may well be that, but for section 280A, petitioners would be entitled to the deductions they seek for the practice room. *182 However, the Congress enacted section 280A as part of the Tax Reform Act of 1976 (Pub. L. 94-455) because of dissatisfaction with the way the courts were applying sections 162 (allowing deductions for trade or business expenses) and 262 (disallowing deductions for personal, living, and family expenses). More specifically, the Congress was concerned that the courts were allowing deductions for what the Congress believed should be characterized as personal expenses. H. Rept. 94-658, pp. 157-160, 1976-3 C.B. (Vol. 2) 695, 849-852; S. Rept. 94-938, pp. 144-147, 1976-3 C.B. (Vol.3) 49, 182-185; General Explanation of the Tax Reform Act of 1976, Staff of the Joint Committee on Taxation, pp. 136-139, 1976-3 C.B. (Vol. 2) 1, 148-151. In responding to a perceived problem, the Congress may deal with the problem on a piece-meal basis or may legislate beyond the bounds of the problem presented to it. See, e.g., Williams v. Lee Optical Co.,348 U.S. 483, 487, 489 (1955); Corn Belt Tel. Co. v. United States,633 F.2d 114, 118 (CA8 1980); *183 Warrensburg Board & Paper Corp. v. Commissioner,77 T.C. 1107, 1110-1111 (1981); Miller v. Commissioner,75 T.C. 182, 189 (1980); Estate of Siegel v. Commissioner,74 T.C. 613, 618 (1980); Estate of Kleemeier v. Commissioner,58 T.C. 241, 251 (1972). In the office-in-the-home situation, the Congress laid down rules that go far beyond merely prohibiting deductions where there was nonbusiness use of the relevant portion of the dwelling unit. In structuring section 280A, the Congress laid down as a general rule a prohibition on deductions with respect to use of the taxpayer's residence (sec. 280A(a)), but provided a series of exceptions, each with its own exceptions and limitations. Paragraph (1) of section 280A(c) provides an exception from the general prohibition in those situations where a business use satisfies the following series of requirements: (a) the opening flush language of the paragraph--relating to exclusive use on a regular basis, (b) one of the three subparagraphs--the relevant one in the instant case relating to principal place of business, and (c) the closing flush language of the paragraph--relating *184 to convenience of the employer. We examine first John's use of the practice room in connection with his trade or business of being an employee of the University. Drucker v. Commissioner, 79 T.C.    ,     (slip. opin., p. 14) (Sept. 30, 1982). That one employment required him to be both a classroom teacher (with the office work that entailed) and a performer with the Quartet. His testimony makes it clear that this was a single employment and that his work with the Quartet was only a small portion of this employment. We conclude that, as to this trade or business, the "focal point" of John's activities was the University and not the practice room. See Drucker v. Commissioner,supra; Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. 105, 109 (1980). See also Green v. Commissioner,78 T.C. 428, 433 (1982), on appeal (CA9 Sep. 7, 1982). On the basis of the foregoing, we conclude that the practice room was not the principal place of business (par. (1)(A) of sec. 280A(c) for John's trade or business as a professor of music at the University. Since petitioners do not claim that *185 the practice room satisfied the requirements of paragraph (1)(B) (use by patients, clients, or customers) or (1)(C) (separate structure) of section 280A(c), we conclude that petitioners fail to meet the requirements of paragraph (1) with respect to John's trade or business as a professor of music at the University. There is no suggestion that petitioners might have satisfied paragraph (2), (3), or (4) (relating to certain storage use, rental use, or use in providing day care services, respectively) of section 280A(c), and so we conclude that petitioners have failed to take themselves out of the general rule of section 280A(a)--disallowance of deductions for business use of the home (see n. 4, supra). In order to qualify under section 280A(c)(1)(A), the practice room must be "exclusively used on a regular basis-- (A)[as] the principal place of business for any trade or business of the taxpayer." The question arises as to whether all deductions are foreclosed (under this provision) merely because we have concluded that John's use of the practice room in connection with his employment *186 by the University is not a qualified use. Although we are not bound by respondent's statement on brief that he "does not question the exclusive use of said room", we have determined under the circumstances of the instant case not to explore this question and consequently we express no opinion as to the application of the "exclusively used" test to a multiple use situation. See Estate of Fusz v. Commissioner,46 T.C. 214, 215 n. 2 (1966). None of petitioners' Quarter or Orchestra performances were given in the practice room. None of petitioners' Orchestra rehearsals were held in the practice room. Although many of petitioners' Quartet rehearsals were held in the practice room, other such rehearsals were held at other places. The Quartet workshop was not held in the practice room. We conclude that petitioners have failed to carry their burden of presenting us with information which could persuade us that the practice room was the principal place of business of either petitioner in any of their trades or businesses as a performer with either the Orchestra or the Quartet. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules *187 of Practice and Procedure.See also Drucker v. Commissioner, 79 T.C. at     (Tannenwald, C.J., concurring). Petitioners rely heavily on Curphey v. Commissioner,73 T.C. 766 (1980), on appeal (CA9 Nov. 24, 1980). On this point, their reliance is misplaced. In Curphey, we noted as follows (73 T.C. at 776 n. 11): Respondent concedes that, if we determine (as we have) that petitioner was engaged in a trade or business in respect of his rental properties, "his activities with regard to that business are conducted in the home office," i.e., that petitioner's home office was his principal place of business with respect to his rental activities. In this connection, we note that, in some situations, there may be a substantial question whether the taxpayer's home or his rental properties constitute his principal place of business. This concession was significant in our holding for the taxpayer in Curphey (73 T.C. at 777). Respondent specifically refuses to make such a concession in the instant case. As to petitioners' attempt to analogize their practice room to the office of a trial attorney, see our analysis in Drucker *188 v. Commissioner, 79 T.C. at     (slip. opin., p. 17). We hold for respondent. [5]
Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. Karen was not otherwise employed by the University.↩
3. In their 1977 tax return, petitioners stated as follows: The taxpayer [is] are a professor[]s for University of Rhode Island. In [his/her] their position as teacher[]s, [his/her is] they are required to do substantial planning preparation and correction of assignments. For the convenience of [his] their employer and due to the fact that the building is not open or available at night or on weekends, the taxpayer[]smaintain[s] an office at [his] their home used uxclusively [sic] for that purpose. As university professor, the taxpayer is required to research extensively and meet and entertain students and colleagues in his home office. It is estimated that 40 % or $     of [his] their salary is earned in services at his/her home office and that 60 % or $     of [his/her] their salary is earned in the presentation portion of [his] their job at the school. [Bracketed language (other than the "sic") was the original language that was stricken on the form used by petitioners and underscored language was then written on the form.] In their petition, petitioners also stated that in the practice room they "do certain entertaining or 'coffee breaks' for students and colleagues. They also use this office for preparation and evaluation of student performance, teaching, lecturing, case review and research." In their testimony at the trial petitioners specifically repudiated the foregoing statement. We are persuaded that their testimony was truthful and that their representations on their tax return and their petition were not truthful, and have made our findings of fact accordingly.↩
4. Section 280A provides, in pertinent part, as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer. [,] (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. (5) Limitation on deductions.--In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used. [The foregoing reflects amendments enacted in 1977 (by sec. 306 of Pub. L. 95-30, 91 Stat. 152-153) and 1981 (by sec. 113(c) of Pub. L. 97-119, 95 Stat. 1642), which apply to taxable years beginning after December 31, 1975.]↩
5. Under these circumstances, we do not decide respondent's contentions (1) that petitioners are not entitled to any deduction because they have failed to meet the "convenience of the employer" test and (2) that any deduction petitioners may otherwise be entitled to is to be reduced under section 280A(c)(5)↩.