CODINGTON COUNTY HUMANE SOCIETY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Codington County Humane Soc. v. Commissioner
Docket No. 21539-89X
United States Tax Court
T.C. Memo 1991-186; 1991 Tax Ct. Memo LEXIS 213; 61 T.C.M. (CCH) 2496; T.C.M. (RIA) 91186; April 29, 1991, Filed *213 Decision will be entered for the respondent. J. Douglas Austin and Alan L. Austin, for the petitioner. William I. Miller, for the respondent. TANNENWALD, Judge. TANNENWALD
MEMORANDUM OPINION The issue for decision is whether respondent abused his discretion in denying petitioner's application for an extension of time to file an amended application in which it sought retroactive recognition as a tax-exempt organization under section 501(c)(3), [1] from the date of its incorporation on August 15, 1977, to August 3, 1988, the effective date of respondent's recognition of such tax-exempt status. This case was submitted under Rule 122. The facts and representations contained in the administrative record are presumed to be true for the purpose of this proceeding. Petitioner was incorporated on August 15, 1977, under the *214 laws of South Dakota. Since incorporation, petitioner has had, and had at the time of the filing of the petition herein, its principal office in Watertown, South Dakota. Petitioner's purposes, as set forth in its original Articles of Incorporation, were as follows: The purpose or purposes for which the corporation is organized: To prevent cruelty to animals, to prevent the propagation of unwanted animals through educational and other means, to obtain information concerning the condition of unwanted, neglected and abused animals, to encourage and secure the enforcement of laws for their protection, to urge humane education in the public schools, to educate public sentiment concerning the rights and proper treatment of animals, to appoint officers for the aforesaid purposes, to do and perform any other acts conducive to the best interest of our community and to enable it to carry out and perform the aforesaid purposes.
On June 29, 1988, petitioner's Articles of Incorporation were amended to restate its purposes as follows: This corporation is organized exclusively for charitable, religious, educational and scientific purposes within the limits of Section 501(c)(3) of the *215 Internal Revenue Code of 1954 as amended or the provisions of any future United States Internal Revenue Law. Specifically, this corporation is organized: To prevent cruelty to animals, to prevent the propagation of unwanted animals through educational and other means, to obtain information concerning the condition of unwanted, neglected and abused animals, to encourage and secure the enforcement of laws for their protection, to urge humane education in the public schools but not including attempting to influence legislation, to educate public sentiment concerning the rights and proper treatment of animals, to appoint officers for the aforesaid purposes, to do and perform any other acts conducive to the best interest of Codington County, South Dakota and to enable it to carry out and perform the aforesaid purposes.
Petitioner's incorporators and initial board of directors were 11 in number and included Kevin Manson (Manson) and Betty Frankson (Frankson). At the time of its incorporation, Manson, an attorney, was doing the legal work for the corporation. Shortly thereafter, he and his family moved from Watertown to Pierre, South Dakota. From its inception, petitioner's board *216 of directors intended it to achieve tax-exempt status. Petitioner's officers and directors first became aware in the latter part of November 1980 that respondent had no record of granting it tax-exempt status under section 501(c)(3). At a board of director's meeting, held on February 12, 1981, the board voted to take action to straighten out petitioner's tax-exempt status. Following this meeting, Frankson contacted Manson and reported, at a board of directors meeting on March 12, 1981, that Manson stated that he would take care of the necessary filings. All of the necessary information to file a proper application for recognition of exemption under section 501(c)(3) was supplied to Manson. On or about September 2, 1982, petitioner filed Forms 990, Return of Organization Exempt from Income Tax, for the periods July 1, 1980, through June 30, 1981, and July 1, 1981, through June 30, 1982. Although it did not insert the section number of its claim for exemption under section "501(c)( )" on the first page of Form 990, a Schedule A entitled "Organization Exempt under Section 501(c)(3)" was attached to each Form 990. In the summer of 1981, a number of the original board of directors *217 resigned. This appears to be the reason why the matter of seeking tax-exempt status under section 501(c)(3) continued to be overlooked. Olga S. Olsen was very much interested in petitioner's work, and prior to her death on December 8, 1987, she made substantial gifts to petitioner and also included petitioner in her will as a residuary beneficiary. Under South Dakota law, exemption from inheritance tax is granted to tax-exempt organizations within the meaning of section 501(c)(3). See S.D. Codified Laws secs. 10-4-9.2 and 10-40-23(2) (1989). In the spring of 1988, at or about the time the inheritance tax report for the estate of Olga S. Olsen was being prepared, it was learned by petitioner's then current officers that petitioner still did not have a determination as to its tax-exempt status under section 501(c)(3). The South Dakota Department of Revenue assessed an inheritance tax of $ 43,562.05 on the legacy to petitioner from Olga S. Olsen because it had not been recognized as a tax-exempt organization under section 501(c)(3) as of the date of death. [2]
*218 On August 3, 1988, petitioner filed its initial Form 1023, Application for Recognition of Exemption under Section 501(c)(3). On October 5, 1988, respondent indicated to petitioner that any recognition of its tax-exempt status under section 501(c)(3) would normally be effective only from and after August 3, 1988, but that petitioner could file a Form 1024 seeking exemption under section 501(c)(4) for the prior period. On or about October 12, 1988, petitioner filed a Form 1024 requesting exemption under section 501(c)(4). On October 20, 1988, respondent determined that petitioner would be treated as a tax-exempt organization under section 501(c)(3) from the date of its initial application, effective August 3, 1988, but that it would be treated as tax exempt under section 501(c)(4) for the period of August 15, 1977, to August 3, 1988, and that the contributions made during this latter period would not be deductible. On or about January 30, 1989, petitioner filed an application (together with an amended Form 1023) seeking an extension of time under section 1.910-1, Income Tax Regs., and Rev. Proc. 79-63, 1979-2 C.B. 578, for filing an amended Form 1023, *219 in order to request a retroactive determination as to its tax-exempt status under section 501(c)(3) from the date of its incorporation. Section 508 provides in part: (a) New Organizations Must Notify Secretary that They are Applying for Recognition of Section 501(c)(3) Status. -- Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3) -- (1) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or (2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.
Section 1.508-1(a)(2), Income Tax Regs., provides in part: (2) Filing of notice. (i) For purposes of subparagraph (1) of this paragraph, except as provided in subparagraph (3) of this paragraph, an organization seeking exemption under section 501(c)(3) must file the notice described in section 508(a) within 15 months from the end of the month in which the organization was organized, or before *220 March 22, 1973, whichever comes later. Such notice is filed by submitting a properly completed and executed Form 1023, Exemption Application. Notice should be filed with the district director. A request for extension of time for the filing of such notice should be submitted to such district director. Such request may be granted if it demonstrates that additional time is required. (ii) Although the information required by Form 1023 must be submitted to satisfy the notice required by this section, the failure to supply, within the required time, all of the information required to complete such form is not alone sufficient to deny exemption from the date of organization to the date such complete information is submitted by the organization. If the information which is submitted within the required time is incomplete, and the organization supplies the necessary additional information at the request of the Commissioner within the additional time period allowed by him, the original notice will be considered timely.
As petitioner was incorporated on August 15, 1977, it had until the end of November 1978 to file a timely application for recognition of exemption under section 501(c)(3) *221 effective from the date of its incorporation. Petitioner seeks refuge in section 1.9100-1, Income Tax Regs., and Rev. Proc. 79-63, 1979-2 C.B. 578, for its failure to act timely. Section 1.9100-1(a), Income Tax Regs., provides: (a) In general. The Commissioner in his discretion may, upon good cause shown, grant a reasonable extension of the time fixed by the regulations in this chapter for the making of an election or application for relief in respect of tax under subtitle A of the Code provided -- (1) The time for making such election or application is not expressly prescribed by law; (2) Request for the extension is filed with the Commissioner before the time fixed by the regulations for making such election or application, or within such time thereafter as the Commissioner may consider reasonable under the circumstances; and (3) It is shown to the satisfaction of the Commissioner that the granting of the extension will not jeopardize the interests of the Government.
In reviewing the exercise of respondent's discretion in denying petitioner's application for extension of time to file an amended application for recognition as tax exempt *222 under section 501(c)(3) from the date of its incorporation, we refrain from substituting our own judgment for that of respondent. Rather, petitioner must demonstrate an abuse of discretion, and its burden of proof is greater than that of the usual preponderance of the evidence. Martin Fireproofing v. Commissioner, 92 T.C. 1173, 1183 (1989). We hold that petitioner has not carried this burden. Rev. Proc. 79-63, 1979-2 C.B. 578, which petitioner agrees is applicable herein, sets forth the following factors which are generally taken into consideration in determining whether, under the facts and circumstances of each situation, good cause for granting an extension has been shown and the other requirements of section 1.9100-1, Income Tax Regs., have been met: (1) Due diligence of the taxpayer, (2) prompt action by the taxpayer, (3) intent of the taxpayer, (4) prejudice to the interests of the Government, and (5) statutory and regulatory objectives. Petitioner first became aware as early as November 1980, nearly 2 years after the deadline for making a timely application for recognition as tax exempt under section 501(c)(3) from the date *223 of incorporation, that respondent did not have a record of granting it tax-exempt status. Despite this knowledge, through what is at best characterized as carelessness and inadvertence, an application for recognition of exemption (Form 1023) was not filed until almost an additional 8 years had passed. The record herein shows at most a sporadic effort to find out from Manson what he was doing, and there is no evidence whatsoever as to why he did not timely take the required steps to obtain section 501(c)(3) status for petitioner. Further, about half a year transpired from the date of the initial application on Form 1023 and more than 3 months transpired from the date of respondent's determination before petitioner made its application for an extension of time to file an amended application seeking retroactive recognition of exemption under section 501(c)(3). In this context, we note that petitioner filed only two Forms 990 for the years ending June 30, 1981, and June 30, 1982, and even then the forms were not filed until September 2, 1982, over 5 years after petitioner was organized -- an indication which, at best, indicates an indifferent attitude toward meeting the obligations *224 of a section 501(c)(3) organization. Indeed, it seems apparent that petitioner's interest in complying with such obligations did not meaningfully develop until it learned that a bequest to it might not be eligible for treatment as a charitable gift. Clearly, petitioner did not exercise due diligence or take prompt action with respect to the requisite application for recognition of exemption. The main thrust of petitioner's argument is founded upon its claimed reliance on Manson as its attorney charged with responsibility to do what was necessary to obtain section 501(c)(3) status. Such reliance, particularly without adequate followup, is simply not enough. In Estate of Wilbanks v. Commissioner, 94 T.C. 306 (1990), the taxpayer contended that: (1) Respondent abused his discretion in not approving the taxpayer's application for an extension of time to file the estate tax return in light of the explanation by the taxpayer's attorney that it was impossible or impractical for the return to have been completed and filed within 9 months after death, and (2) that the taxpayer had reasonable cause and a lack of willful neglect. The taxpayer argued that, as a consequence, *225 it was not liable for the addition to tax for failure timely to file a return under section 6651(a)(1). Noting that the explanation of the taxpayer's attorney did not contain any explanation of why the taxpayer failed to apply for an extension of time to file the estate tax return until over 3 months after its due date, we stated: In this case, petitioner failed to file an estate tax return within 9 months of decedent's death, but filed such return within the period of extension for which application had been made. If petitioner's application had been approved, decedent's estate tax return would have been treated as timely filed. However, petitioner's application for an extension was not approved by respondent. Since petitioner neither made the application for an extension of time to file when such application should have been made, nor offered any plausible explanation for failing to do so, we hold that respondent did not abuse his discretion by not approving petitioner's application. [94 T.C. at 313; fn. ref. omitted.]
See also Elliott v. Commissioner, 40 T.C. 304, 315 (1963). Finally, petitioner's reliance on the generally liberal *226 judicial attitude toward charitable activities to sustain its charge of respondent's abuse of discretion is beside the point. Such an attitude, to the extent that it exists, does not extend to relieving a charitable organization of the obligations imposed upon it by law. This is particularly true, in the context of this case, where Congress clearly expressed its concerns when, at the time it enacted section 508(a), it stated: Congress and the Internal Revenue Service are handicapped in evaluating and administering existing law by the lack of information with respect to many existing organizations. Your committee believes that it is not appropriate to continue to provide substantial tax benefits to organizations unless the organizations have provided the Internal Revenue Service with information as to their nature, purpose, and activities. Accordingly, your committee's bill requires new organizations to notify the Service of their existence and the fact that they are claiming to be exempt under section 501(c)(3). * * * * * * An organization organized after May 26, 1969 (the day before your committee's tentative decision on this matter was announced), is not to be treated *227 as exempt under section 501(c)(3) unless it has notified the Internal Revenue Service, in accordance with regulations, that it is applying for recognition of its exempt status. * * * [H. Rept. 91-413, 1969-3 C.B. 200, 225.1]
See also S. Rept. 91-552, 1969-3 C.B. 423, 459. None of the cases or rulings relied upon by petitioner requires us to reach a different result. Unlike Continental Bank v. United States, 517 F. Supp. 918 (E.D. Pa. 1981), affd. in an unpublished order 688 F.2d 819 (3d Cir. 1982), the present case does not involve a situation where application of the time requirements for an election under the regulations were invalid as applied to the taxpayer therein. Nor is this the proper case, based on the facts as presented herein and the legislative concern about notification of an organization's intention to apply for exempt status, to hold that the provisions of sections 1.508-1(a)(2) and 1.9100-1, Income Tax Regs., are merely procedural and that therefore there was substantial compliance with section 508(a). See Kerry v. Commissioner, 89 T.C. 327 (1987), wherein we discussed *228 Taylor v. Commissioner, 67 T.C. 1071 (1977), and stated our disagreement with Maid-Rite Steak Co., Inc. v. United States, 643 F. Supp. 1162 (M.D. Pa. 1986), both of which cases are cited by petitioner. Rev. Rul. 80-259, 1980-2 C.B. 192, also cited by petitioner, merely states that the Service will give consideration to applying respondent's discretionary authority under section 1.9100-1, Income Tax Regs., to extend the time for satisfying section 508(a); it does not resolve the issue whether respondent would in fact exercise such discretion. In sum, we hold that, based upon the facts contained in the administrative record herein, petitioner has not carried its burden of proving that respondent abused his discretion in denying its application for extension of time for filing an amended application for exemption, and therefore it is not entitled to retroactive recognition as being tax exempt under section 501(c)(3). For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. Unless otherwise specified, all statutory references are to the Internal Revenue Code as amended, and any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
2. Presumably the South Dakota Department of Revenue would grant petitioner a refund of any inheritance taxes paid if respondent had made a retroactive determination that petitioner was a tax-exempt organization under section 501(c)(3)↩ as of the date of Olga S. Olsen's death.